Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/08/2022 09:08 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
SARAH A. CULLEN, APPELLANT.
___ N.W.2d ___

Filed April 15, 2022.    No. S-21-447.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Constitutional Law: Judgments: Proof.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

3. **Postconviction: Constitutional Law: Proof.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the U.S. or Nebraska Constitution. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

4. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

5. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

6. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To show prejudice under the prejudice component of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

7. **Effectiveness of Counsel: Presumptions: Proof.** The two prongs of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.

8. **Effectiveness of Counsel: Appeal and Error.** When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. Much like claims of ineffective assistance of trial counsel, the defendant must show that but for appellate counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different.

9. **Postconviction.** In a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing.

10. **Trial: Attorney and Client: Testimony.** Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make.

Appeal from the District Court for Douglas County: Gregory M. Schatz, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Sarah A. Cullen appeals the order of the district court for Douglas County which denied her motion for postconviction relief. Cullen, who is serving a sentence of imprisonment for 70 years to life for a conviction for intentional child abuse resulting in death, set forth claims of ineffective assistance of both trial and appellate counsel. The district court determined that all of Cullen's claims were insufficiently pled, and it therefore denied her motion for postconviction relief without an evidentiary hearing. We affirm.

## STATEMENT OF FACTS

Cullen was convicted of intentional child abuse resulting in death in connection with the death of an infant who was in her care. The district court sentenced her to imprisonment for 70 years to life, and her conviction and sentence were affirmed on direct appeal. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

Further details may be found in the opinion on direct appeal, but the evidence generally showed as follows: In January 2013, Christopher (Chris) Bell and Ashley Bell hired Cullen to work temporarily in their home as a nanny for their son, Cash Christopher Bell, who was born in October 2012. On the morning of February 28, 2013, Cullen was caring for Cash while the Bells were at work. Both Chris and Ashley testified that it had been a typical morning before they went to work and that Cash was acting normally. Cullen arrived at the Bells' house at 7:15 a.m. Chris had already left for work, and Ashley left for work at around 7:40 a.m.

Around 9:19 a.m., Chris returned home to retrieve a checkbook. Chris looked in on Cash who was lying face down. Chris rolled Cash over; Cash did not open his eyes, but he took a breath and Chris believed that he was sleeping. Cullen

was in a nearby bathroom while Chris was in the house. Chris estimated he was in the house for less than a minute, and as he was getting into his car, Cullen came to the door with Cash in her arms.

At around 10:15 a.m., Cullen called her boyfriend and told him that Cash was not breathing and that his feet were blue. Her boyfriend came to the Bells' house. Cash was not responsive but was breathing. Cullen's boyfriend took Cash and Cullen to a hospital. When they arrived at the hospital's emergency room, Cullen stated that she found Cash "sleeping on his belly and he doesn't normally sleep like that."

Cullen called Ashley shortly after calling her boyfriend. Cullen told Ashley that she was taking Cash to the hospital because he had just woken up from a nap and was not breathing right. The Bells arrived at the emergency room. Ashley questioned Cullen about what had happened that morning, and Cullen stated only that Cash woke up from his nap in that condition.

Cash was eventually transported to a pediatric hospital due to the extent of his injuries. Cash's neurological condition rapidly deteriorated over the following days. He exhibited a lack of responsiveness and frequent seizures that could be controlled only through high doses of medication. Doctors determined that Cash would not have any significant neurologic recovery, and based on the doctors' long-term prognosis that Cash would never be able to see, hear, or walk or be without a feeding tube and a ventilator, the Bells decided to take Cash off life support on March 5, 2013. He died that day.

Law enforcement officers interviewed Cullen on February 28 and March 1, 2013. During the February 28 interview, Cullen told four versions of what had occurred with Cash that morning. She first stated that Cash had been acting normally but that after he woke from a nap, his breathing was not normal. At that time, Cullen denied that Cash had fallen or had an accident that morning. After the interviewer informed Cullen that Cash's skull was fractured and that his head had

to have hit something or something had to have hit his head, Cullen stated that when she was walking out the back door with Cash, she may have accidentally hit his head on the door. The interviewer later informed Cullen that a pediatrician had said that Cash's injuries could not have been caused by hitting his head on a door. Cullen initially denied that anything else had happened, but she later stated that Cash had fallen out of his swing at about 8:15 a.m. and that he whimpered but then fell asleep. The interviewer again consulted with a pediatrician and informed Cullen that Cash's injuries could not have been caused by a short fall from the swing and that instead, his injuries were consistent with shaking or being thrown down hard. Cullen began crying and admitted that she had lied. She stated that Cash had fallen out of the swing the day before, but that at about 8:15 a.m. on February 28, she had slipped on the stairs while carrying Cash and he had fallen onto the tile floor below. She denied shaking Cash. Cullen generally maintained this fourth version of events in a written statement and during an interview on March 1.

Several medical experts testified about the extent of Cash's injuries and their possible causes. Evidence indicated significant injuries, including a large hematoma and a smaller bruise on the back of the head, two skull fractures, hemorrhages in the surface of the brain, injury to the brain itself, and multiple retinal hemorrhages. Doctors testified that the brain injuries affected Cash's entire brain and that 90 percent of his brain was permanently damaged. The medical experts agreed that Cash's injuries were consistent with nonaccidental trauma caused by shaking or impacts to the head or both. None of the experts could pinpoint an exact date and time of injury, but they estimated that the brain and eye injuries occurred within 0 to 2 days of February 28, 2013. Based on medical evidence and statements given by the Bells and Cullen, two medical experts opined that Cash's brain injury occurred sometime after Ashley left for work on February 28. They testified that children with Cash's type of brain injury are immediately

unwell and that symptoms would manifest fairly quickly and would be noticeable. Several medical experts testified that Cullen's versions of events could not have accounted for all of Cash's injuries.

Cullen appealed her conviction and sentence to this court. Cullen had new counsel on direct appeal, and in addition to other assignments of error, she set forth claims of ineffective assistance of trial counsel. She claimed that trial counsel was ineffective in four respects, and we determined that three of the claims were without merit. The fourth claim was that trial counsel was ineffective for failing to investigate and call a medical expert to testify on her behalf. We concluded that the record on direct appeal was inadequate to address this claim. Having rejected Cullen's other assignments of error, we affirmed her conviction and sentence. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

On November 16, 2016, Cullen filed a verified motion for postconviction relief in which she set forth four claims of ineffective assistance of trial counsel and one claim of ineffective assistance of appellate counsel. We quote these allegations later in our opinion. Before setting forth her specific claims of ineffective assistance of counsel, Cullen made certain allegations in her motion. She generally alleged as follows: After being charged in this case, Cullen was originally represented by counsel retained by her father. She asserted that her original counsel "performed valuable service" but that he eventually withdrew as counsel upon the advice of a trial consultant. Cullen's original counsel had contacted a trial consultant from Ohio with whom he had a professional relationship. He asked the trial consultant, who had 25 years of experience assisting in the defense of persons charged with child abuse, to evaluate Cullen's case. After meeting with Cullen and reviewing evidence in this case, the trial consultant determined that Cullen's case was "fully defensible." The trial consultant made suggestions of how Cullen's case could be defended, and she recommended "several experts" who could provide testimony

in Cullen's defense. In her motion for postconviction relief, Cullen included a list of the names of several experts who had been recommended by the trial consultant. The trial consultant further advised that Cullen's original counsel should withdraw, because Cullen's father could not afford to hire the expert witnesses, and that if original counsel withdrew, Cullen would be eligible to be represented by the public defender's office, which would have the budget to hire the experts.

After her original counsel withdrew, Cullen was represented at trial by public defenders. Cullen alleged that her original counsel provided the public defenders with a confidential memorandum setting forth various issues and his suggestions of how Cullen's defense should be handled, including potential witnesses and theories of defense. Those theories of defense involved the possibility that Cash's injuries occurred prior to the time Cullen was caring for him on February 28, 2013, and the possibility that one of Cash's parents caused the injuries. The memorandum also set forth suggestions of the trial consultant, including the names of experts recommended by the trial consultant.

In support of her claims of ineffective assistance of trial counsel, Cullen generally alleged that trial counsel failed to follow up on the suggestions and recommendations of her original counsel and the trial consultant and that trial counsel failed to consult with her regarding potential defenses and witnesses and her right to testify at trial. In support of her claim of ineffective assistance of counsel on direct appeal, Cullen alleged that upon her conviction, her father hired new counsel to prosecute her direct appeal but that such counsel provided inadequate representation. She alleged that appellate counsel failed to meet with her to discuss the issues in her appeal and never explained to her the need to bring forward all instances of ineffective assistance of trial counsel. She alleged that if appellate counsel had so advised her, she would have identified the failures of trial counsel that she set forth in her postconviction claims of ineffective assistance of trial counsel.

The State moved the district court to dismiss Cullen's motion for postconvicton relief without an evidentiary hearing. The court granted the State leave to submit written arguments, and it granted Cullen leave to file responsive written arguments. After the parties submitted written arguments, the court filed an order on May 7, 2021, in which it found that Cullen was not entitled to an evidentiary hearing. The court generally determined that each of Cullen's claims was not pled with adequate specificity, and it therefore dismissed Cullen's motion for postconviction relief.

Cullen's first claim of ineffective assistance of trial counsel was that counsel "failed to adequately investigate [her] defenses and advise [her] of her options, including but not limited to the alternate theories of the cause of the severity of the injuries." With regard to this claim, the district court stated that Cullen had "failed to set out what exculpatory evidence might have been found with an adequate investigation, or how the outcome of the trial would have been different with such an investigation." The court stated that Cullen simply listed the names of potential witnesses that should have been contacted but that she provided "no facts as to what information . . . they would have provided or how any such information might have impacted cross-examination of the State's witnesses." The court concluded that Cullen made "no specific allegations as to how a more effective investigation would have changed the outcome of the trial."

Cullen's second claim of ineffective assistance of trial counsel was that counsel "failed to investigate the hiring of expert witnesses to support [her] description of how the injury occurred and failed to utilize [a] trial consultant with 25 years of experience who had examined the facts and met with [Cullen]." With regard to this claim, the court stated that Cullen "provided no specific defenses that would have been offered through any such expert witnesses, or the details of any alternative explanations that might have been presented

. . . at trial" and that she "failed to set forth any testimony that such an expert would have given." Regarding the use of a trial consultant, the court stated that Cullen "failed to show how an expert assisting [Cullen] could have provided [Cullen's] counsel with assistance in a more effective cross-examination of the State's expert witnesses."

Cullen's third claim of ineffective assistance of trial counsel was that counsel "failed to meet with her on a single occasion to discuss the facts of the case, failed to consult with her about her right to testify and fail[ed] to inquire as to her desire to testify at trial." With regard to this claim, the court stated that Cullen "failed to show how any such meeting with [Cullen] might have had an impact on the outcome of the trial, or that there is a reasonable probability that the outcome of [her] trial would be different." Regarding Cullen's right to testify, the court stated that Cullen's claim was a "generic" allegation that "if called to testify, she would [have] explained 'how the incident actually happened.'" But, the court stated, Cullen alleged "no other facts as to how the incident occurred or how her testimony would be different than the numerous statements given to law enforcement, which were introduced at trial." The court noted that Cullen also alleged that she would have testified "'about her care and love for the child and about the sorrow she had that the child was injured in any way'" and that such testimony "would have negated the State's closing argument that she lacked emotion during the entirety of the trial." The court again characterized this allegation as "generic" and stated that such testimony "could not have changed the outcome of the trial in light of the other evidence adduced at the trial."

Cullen's fourth claim of ineffective assistance of trial counsel was that counsel "failed to adequately prepare for trial in that they did not depose a single witness or prepare for cross examination of any of the medical or expert witnesses." With regard to this claim, the court stated that Cullen did not

"allege what information would have been obtained . . . in deposing the State's expert witnesses in order to provide for more effective cross-examination of the witnesses, or what questions should have been asked on cross-examination from any such depositions." The court further stated that Cullen failed "to identify what questions should have been asked of the State's witnesses that would have favorably assisted" her defense.

Cullen finally claimed ineffective assistance of appellate counsel, and she alleged that counsel "fail[ed] to meet with her and discuss the ineffective assistance of trial counsel so as to effectively set out those complaints in her appellate brief and thereby limiting the parameters of her [postconviction] proceedings." With regard to this claim, the court stated that Cullen had "[o]nce again . . . failed to allege facts as to how this failure . . . effected [sic] the outcome of [her] appeal, or that there is a reasonable probability that the outcome of [her] appeal would have been different."

In summary, the district court found that

as to each ground presented by [Cullen] in her motion for postconviction relief, [she] has failed to show how she was prejudiced by either her trial or appellate counsel's failure, or that but for her trial or appellate counsel's failure to provide effective professional representation, . . . there is a reasonable probability that the outcome . . . in this case could have been any different than it was.

The court concluded that Cullen was not entitled to an evidentiary hearing and that her motion should be dismissed.

Cullen appeals the district court's order that dismissed her motion for postconviction relief.

ASSIGNMENT OF ERROR

Cullen claims that the district court erred when it denied her claims of ineffective assistance of trial counsel and her claim of ineffective assistance of appellate counsel without an evidentiary hearing.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021).

## ANALYSIS

We begin our analysis by setting forth standards that are applicable to our review of postconviction claims. We then review each of Cullen's claims under those standards, and as discussed below, we determine that the district court did not err when it denied Cullen's claims without an evidentiary hearing.

### Postconviction Standards.

[2] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *Id.* Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Britt, supra*.

[3] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the U.S. or Nebraska Constitution. *Britt, supra*. If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*.

[4-7] Cullen's claims for postconviction relief assert that she received ineffective assistance of counsel. A proper

ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *Britt, supra*. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Britt, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*. The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. See *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021).

[8] Cullen was represented on direct appeal by counsel different from her trial counsel. In addition to asserting claims of ineffective assistance of trial counsel, Cullen alleges that her appellate counsel performed deficiently when counsel failed to consult with her and to assign error on direct appeal asserting claims of ineffective assistance of trial counsel. When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland* test. *Parnell, supra*. If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id*. Much like claims of ineffective assistance of trial counsel, the defendant must show that but for appellate counsel's failure

to raise the claim, there is a reasonable probability that the outcome would have been different. *Id.*

With these principles in mind, we review Cullen's claims of ineffective assistance of counsel. We note that the sole claim of ineffective assistance of trial counsel that Cullen preserved in her direct appeal was the claim that trial counsel was ineffective for failing to investigate and call a medical expert to testify on her behalf. In her motion for postconviction relief now under review, Cullen set forth claims of ineffective assistance of trial counsel not raised on direct appeal which would ordinarily be procedurally barred for failure to raise the claims on direct appeal. See *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022) (when trial counsel is different from counsel on direct appeal, defendant must raise on direct appeal any issue of trial counsel's ineffective performance known to defendant or apparent from record; otherwise, issue will be procedurally barred).

However, Cullen also sets forth a claim of ineffective assistance of appellate counsel in which she asserts, inter alia, that appellate counsel failed to raise claims of ineffective assistance of trial counsel, including the claims she now sets forth in her postconviction motion. As noted above, reviewing a claim of ineffective assistance of appellate counsel for failing to raise claims on direct appeal requires an assessment of whether trial counsel was ineffective. We therefore review each of Cullen's claims of ineffective assistance of trial counsel and her claim of ineffective assistance of appellate counsel to determine whether the district court erred when it concluded that Cullen's claims were not sufficiently pled.

*Cullen Did Not Allege Sufficient Facts to*
*Support Her First Claim of Ineffective*
*Assistance of Trial Counsel.*

Cullen claims that the district court erred when it refused an evidentiary hearing on her claim that trial counsel "failed to adequately investigate [her] defenses and advise [her] of

her options, including but not limited to the alternate theories of the cause of the severity of the injuries." The district court generally determined that Cullen set forth no specific allegations of what potential evidence would have been found with an adequate investigation or how such an investigation would have resulted in a different outcome in her trial. We agree.

The district court stated that Cullen simply listed the names of potential witnesses that should have been contacted but that she provided "no facts as to what information that they would have provided or how any such information might have impacted cross-examination of the State's witnesses." In her claim, Cullen asserted that counsel should have investigated a defense asserting "alternate theories" for the cause of Cash's injuries, including the possibility that one of Cash's parents caused his injuries. She asserted that trial counsel should have focused on the evidence that Chris came home briefly on the morning that Cash was injured. Cullen also alleged that an anonymous witness had contacted her original counsel and claimed that Ashley had anger management issues and that she had been involved in an altercation at her workplace. Cullen alleged that her original counsel provided trial counsel with the name of a person who might have been the anonymous witness, as well as the name of a contact at Ashley's workplace who might have information regarding the alleged altercation. Cullen alleged that her trial counsel failed to follow up on this information provided by her original counsel.

[9] Our case law is clear that in a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing. *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021). Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists. *Id*.

Cullen's allegations regarding potential defenses were generally that an investigation might have uncovered helpful evidence. Although she asserts trial counsel could have argued a defense which would have placed suspicion on Cash's parents, she makes no specific allegations of actual evidence or testimony that would have implicated either parent. Cullen speculates about Chris' reasons for briefly returning home that morning, and regarding Ashley's alleged anger issues, Cullen only asserted that if trial counsel contacted the potential witnesses identified by her original counsel, those witnesses might have provided some evidence regarding an altercation at her workplace. She alleged no specific evidence that would have been discovered, and to the extent she alleged that counsel might have found evidence of an altercation at work, Cullen did not show why evidence regarding an alleged workplace altercation would translate or prove that Ashley had injured Cash.

We determine that Cullen's allegations did not set forth sufficient facts to support her first claim of ineffective assistance of trial counsel. We therefore conclude that the district court did not err when it refused an evidentiary hearing on this claim.

*Cullen Did Not Allege Sufficient Facts to
Support Her Second Claim of Ineffective
Assistance of Trial Counsel.*

Cullen claimed that trial counsel was ineffective because counsel "failed to investigate the hiring of expert witnesses to support [her] description of how the injury occurred and failed to utilize [a] trial consultant with 25 years of experience who had examined the facts and met with [Cullen]." The district court generally determined that Cullen made no specific allegations of what such experts would have testified. We agree.

Cullen alleged that the trial consultant identified specific potential expert witnesses, and Cullen provided the list of names in her motion. However, regarding the substance of such expert's testimony, Cullen alleged only that the trial

consultant asserted that their testimony would have been helpful to her defense. Such allegations are not allegations of specific fact and instead are conclusory. She made no allegations of the specific testimony those experts would have given in her defense, and she therefore did not show how their testimony would have resulted in a different outcome in her trial.

We therefore conclude that the district court did not err when it denied this claim without an evidentiary hearing.

*Cullen Did Not Allege Sufficient Facts to*
*Support Her Third Claim of Ineffective*
*Assistance of Trial Counsel.*

Cullen also claims that the district court erred when it refused to conduct an evidentiary hearing on her claim that trial counsel "failed to meet with her on a single occasion to discuss the facts of the case, failed to consult with her about her right to testify and fail[ed] to inquire as to her desire to testify at trial." The district court determined that Cullen failed to make specific allegations of what she would have told counsel or the substance of her potential testimony and failed to make allegations that showed that her testimony would have resulted in a different outcome in the trial. We agree.

[10] Cullen generally alleged that counsel did not discuss the case with her, and in particular, she alleged that counsel did not discuss with her her right to testify and whether or not she should testify in her defense. We have recognized that a defendant has a fundamental constitutional right to testify, but a trial court does not have a duty to advise the defendant of his or her right to testify or to ensure that the defendant waived this right on the record. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011). We have recognized that defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make. *Id.*

In a postconviction action when a defendant raises a claim of ineffective assistance of trial counsel related to counsel's failure with regard to advising the defendant on his or her right to testify, we have subjected the claim to the *Strickland* standard and required the defendant to show how trial counsel's alleged deficient performance prejudiced the defense. In *Iromuanya*, we concluded that "because the record show[ed] that the jury heard [the defendant's] statement of events from his police interview, he was not prejudiced by his trial counsel's alleged failure to reasonably advise him to testify." 282 Neb. at 812-13, 806 N.W.2d at 423. See, also, *Yannai v. U.S.*, 346 F. Supp. 3d 336, 347 (E.D.N.Y. 2018) (relying on *Weaver v. Massachusetts*, ___ U.S. ___, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017), to the effect that on direct review, prejudice resulting from structural error may be presumed but even if denial of right to testify may be structural error, in habeas corpus action, *Strickland* applied to claim of ineffective assistance of trial counsel with regard to right to testify and defendant was required "to demonstrate prejudice flowing from failure to testify"). See, similarly, *State v. Fuentes*, 302 Neb. 919, 926 N.W.2d 63 (2019) (citing *Weaver, supra*). Therefore, even if we presume that trial counsel did not discuss with Cullen her right to testify and whether she should testify in her defense as Cullen has alleged, she was required to show how such failure prejudiced her defense.

Cullen made general allegations that she would have testified that she would have told her side of the story. However, she does not specify what that story would have been. The evidence in this case already included her statements to police in which she set forth four versions of what happened to Cash that morning. As we noted in *Iromuanya, supra*, there was no prejudice when the defendant's side of the story was already in evidence through statements the defendant had made to police. Cullen does not allege whether the version she would have testified to at trial was one of those four versions or yet another account. It is unclear how her telling her story would

have changed the outcome of the trial, especially in light of the fact that the evidence already included four versions of what she told police.

Cullen also asserts that she would have testified she loved Cash and was upset about what had happened to him and that this would have countered the State's arguments that she was cold and uncaring. We believe her hypothetical testimony would have opened the door to harsh cross-examination, further diminishing any impact it might have had on the trial's outcome. We think the district court was correct to find that such testimony would not reasonably have resulted in a different outcome to the trial, in light of the other evidence against Cullen.

Even assuming as we have done that Cullen was not advised by counsel regarding her right to testify, we agree with the district court's determination that Cullen did not adequately allege how she was prejudiced by trial counsel's failure to so advise her and that the record is to the contrary. We therefore conclude that the district court did not err when it refused an evidentiary hearing on this claim.

*Cullen Did Not Allege Sufficient Facts to Support Her Fourth Claim of Ineffective Assistance of Trial Counsel.*

Cullen claims that the district court erred when it refused an evidentiary hearing on her claim that counsel provided ineffective assistance because counsel "failed to adequately prepare for trial in that they did not depose a single witness or prepare for cross examination of any of the medical or expert witnesses." The district court determined that she alleged no specific testimony. We agree.

As we discussed with Cullen's other claims, Cullen was required to identify specific witnesses who could have testified, what their specific testimony would have been, and how that would have resulted in a different outcome. Instead, in her motion Cullen alleged only generalities.

The district court did not err when it refused an evidentiary hearing on this claim.

*Cullen Did Not Allege Sufficient Facts
to Support Her Claim of Ineffective
Assistance of Appellate Counsel.*

Cullen claims that the district court erred when it refused an evidentiary hearing on her claim that her appellate counsel "fail[ed] to meet with her and discuss the ineffective assistance of trial counsel so as to effectively set out those complaints in her appellate brief and thereby limiting the parameters of her [postconviction] proceedings." The district court determined that Cullen failed to allege how the outcome of her appeal would have been different if appellate counsel had raised the claims. We agree.

Because Cullen's claim of ineffective assistance of appellate counsel was a layered claim based on the failure of appellate counsel to raise claims of ineffective assistance of trial counsel, we review whether trial counsel was ineffective under the *Strickland* test. See *State v. Parnell*, 305 Neb. 932, 943 N.W.2d 678 (2020). Cullen must show that but for appellate counsel's failure to raise the claims, there is a reasonable probability that the outcome of the appeal would have been different, and if Cullen failed to adequately allege that trial counsel was ineffective, then Cullen was not prejudiced by appellate counsel's failure to raise the issues. See *id*.

For her claim of ineffective assistance of appellate counsel, Cullen relied on the claims she set forth in her postconviction motion alleging ineffective assistance of trial counsel. As discussed above, we agreed with the district court's determination that each of those claims was not sufficient. Therefore, Cullen's claim of ineffective assistance of appellate counsel to raise those claims on direct appeal is of no avail.

We conclude the district court did not err when it rejected Cullen's claim of ineffective assistance of appellate counsel without an evidentiary hearing.

## CONCLUSION

As explained, we conclude that the court did not err when it denied Cullen's postconviction claims without an evidentiary hearing. We therefore affirm the district court's order.

AFFIRMED.

FREUDENBERG, J., not participating.