IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. COLE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CEDRICK D. COLE, APPELLANT.

Filed July 30, 2024.    No. A-23-868.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Cedrick D. Cole, pro se.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

MOORE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Cedrick D. Cole appeals from the order of the Lancaster County District Court denying his motion for postconviction relief without holding an evidentiary hearing. We affirm.

## II. BACKGROUND

### 1. CONVICTION AND SENTENCE

In 2021, Cole was convicted by a jury of first degree arson. See *State v. Cole*, No. A-21-1020, 2022 WL 4137235 (Neb. App. Sept. 13, 2022) (selected for posting to court website). The district court sentenced him to 25 to 40 years' imprisonment. *Id.* As set forth in this court's previous opinion, the evidence adduced at Cole's jury trial is as follows.

On Saturday, October 10, 2020, Cole was with his then-girlfriend Jordan Ragland at her apartment in Lincoln, Nebraska, and they argued about Cole's alleged infidelity.

- 1 -

Following their argument, Ragland asked her friend, Ashley Rice, to pick her up from the apartment and help her move her belongings to her mother's house. Rice arrived to pick up Ragland in the early afternoon. Following Ragland's departure, Cole made numerous calls to Ragland, most of which she ignored. Approximately 10 minutes after she left the apartment, Ragland received a Snapchat video from Cole showing her couch on fire. In a video recording of Ragland opening and viewing the Snapchat video, Ragland can be heard saying "Oh my god." Rice then asked Ragland, "He actually set it on fire?" Ragland responded "[y]es." After viewing the Snapchat video, Rice and Ragland began heading back to the apartment. Cole testified that he had called Ragland numerous times to alert her that her couch had caught fire, but to no avail. He explained that this was the reason he sent Ragland a Snapchat video of the burning couch.

Cole claimed he attempted to subdue the fire by dousing the flames with flour and water. Ragland's neighbor, Shelby Marshall, assisted by running jugs of water over from her apartment to throw at the fire. Despite these efforts, the flames became uncontrollable and spread beyond the couch to the rest of the apartment unit. According to Marshall, she was "more active in trying to put the fire out" than Cole. She further stated that Cole seemed "lethargic." According to Cole, he had suffered a previous injury to his leg, which limited his mobility. Cole called 911 to request emergency assistance. However, Marshall stated that Cole did not call 911 until she instructed him to do so. Lincoln Fire and Rescue arrived shortly thereafter and successfully suppressed the fire.

Cole left the scene of the fire prior to the arrival of emergency personnel because he was aware of outstanding warrants for his arrest. After leaving Ragland's apartment, Cole asked Rice and Ragland to pick him up. Rice dropped off Ragland and Cole at a friend's house a few blocks away from the apartment. Cole remained at the friend's house while Ragland walked to the scene of the fire and spoke with law enforcement.

. . . .

Surveillance footage from a neighboring building on October 10, 2020, showed Cole pick up an item off the ground near a charcoal grill outside of Ragland's apartment unit. Rice testified that Ragland and Cole had previously stored lighter fluid next to the grill and that the item Cole picked up from near the grill "would have to [have been] lighter fluid." Ragland and Cole testified that they stored the lighter fluid in the garage. Cole testified that surveillance footage showed him picking up a water bottle which only contained water. Fire Marshal Thomas Schmidt, who was qualified as an expert fire inspector at trial, stated that he did not find any remnants of a lighter fluid bottle in the apartment or near the grill.

Ragland testified that she frequently filled a torch with butane while sitting on the couch in her apartment, sometimes spraying excess butane onto the couch. She further stated that she habitually lit incense, which she described as "almost like ... a punk for fireworks," and she placed them between couch cushions, among various other locations throughout her apartment. She surmised that a previous fire that had started on the same couch was ignited by her incense; the previous fire took place in September 2020. She noted that at that time firefighters had advised her to dispose of the burned couch cushions because they were "more flammable" due to the release of certain oils in the microfibers

of the couch. She stated that she was "sure" she placed incense in the couch on the day of the October 10th fire.

*Id.* at *1–2.

Additionally, "Fire Marshal Schmidt testified that he employed a systematic fire investigation approach to determine that the fire originated on the couch in the living room and that the fire "had to [have been] ignited by human hands." *Id.* at *3 (brackets in original).

## 2. DIRECT APPEAL

Cole, with new counsel, filed a direct appeal claiming that the evidence was insufficient to sustain his conviction, his trial counsel was ineffective for failing to challenge the lack of evidence regarding a material element of the crime, and his sentence was excessive. This court affirmed Cole's conviction and sentence on direct appeal and found that his ineffective assistance of trial counsel claim failed. See *State v. Cole, supra*.

## 3. POSTCONVICTION

On April 4, 2023, Cole, pro se, filed a verified motion for postconviction relief. In his motion, Cole alleged defects in the information, errors in the jury instructions, and the ineffective assistance of both trial and appellate counsel. Specifically, he alleged that his trial counsel was ineffective because counsel failed to: (1) object to specified jury instructions; (2) failed to "interview and investigate" five named witnesses (Ashley Rice, Shelby Marshall, Melissa Leuty, Tyronn Blueford, and Frankie Mason) and the named victim (Jordan Ragland) who all "would have testified that they did not see . . . Cole start any fire"; (3) request "independent testing of a water bottle located by Lincoln Fire and Rescue Investigator Schmi[d]t, containing an unknown liquid, which would have concluded that the unknown liquid was in fact water"; and (4) file a motion to quash the information which was not sworn to under oath by the deputy Lancaster County attorney. Cole also alleged that his appellate counsel was ineffective because appellate counsel failed to assign as error on direct appeal: (1) the foregoing claims of ineffective assistance of trial counsel; and (2) the "plain error" by the district court regarding its failure to improperly instruct the jury in specified ways.

A brief hearing on Cole's motion was held on August 23, 2023. Both the State and Cole appeared by video conference. Cole had "no new evidence," but made a personal address to the court stating that he had "learned to be accountable" and "made a lot of changes to [his] life and accepted [his] flaws and promise[d] not to go down this road again." The State submitted on its brief.

In its order entered on October 2, 2023, the district court denied Cole's motion for postconviction relief without an evidentiary hearing. The court found that the information filed by the State met the Constitutional requirements of an information or indictment because it was sufficient to put Cole on notice of the charge against him, prepare his defense, and plead the judgment as a bar against future conviction. Regardless, Cole waived any defect in the information by proceeding to trial without contesting it. The court found that Cole's claims against his trial counsel were procedurally barred because they could have been raised on direct appeal. The court found that Cole's appellate counsel was not ineffective for failing to assign as error trial counsel's

failure to object to jury instructions, interview witnesses, independently test evidence, or file a motion to quash the information.

Regarding Cole's claims against appellate counsel, the district court specifically found the following. The jury was properly instructed. As to trial counsel failing to interview and investigate potential witnesses, the court noted that Cole started a fire inside of an apartment with no one else there; no testimony was elicited during trial that anyone saw him start the fire. Further, three of the named witnesses (Ragland, Rice, and Marshall) testified at trial and were cross-examined, and none testified that they saw Cole start the fire. Cole did not provide any information on the other three named witnesses (Leuty, Blueford, and Mason)--whether they would have had an opportunity to observe the incident, or how their testimony would have changed the outcome of the case when Cole had been in an argument with the owner of the apartment, was on video alone at the apartment when the fire broke out, sent the victim a picture of the fire, and made minimal efforts to put out the fire or contact emergency services. The court pointed out, "Because [Cole] was alone in a small apartment when he started a fire, it is not surprising that a multitude of witnesses could testify that they did not see [Cole] start the fire."

Regarding Cole's claim that an independent test of the water bottle would have concluded that the substance was water, the district court found this claim to be conclusory. The court stated that Cole did not articulate how this would have changed the outcome of the case, and the claim "also clearly contravenes the record" because "Fire Investigator Schmidt also testified that the contents [of the water bottle] were later analyzed at a laboratory and found to be a medium petroleum distillate ignitable liquid." The court added that "even if the substance had been independently tested and found to have been water[,] it would not have changed the outcome of the case" since Cole was "still the only person on video in the apartment at the time the fire was started" and he sent a picture of the fire to Ragland and made minimal efforts to put the fire out or call emergency services.

Finally, as to the alleged ineffectiveness of trial counsel for failing to file a motion to quash the information, the district court found that the information contained a verification and oath, and therefore the record affirmatively refuted Cole's claims to the contrary. The court stated,

> The record clearly shows that [Cole's] trial counsel was not ineffective for failing to object to jury instructions, interview witnesses, get independent testing of evidence, or object to the Information in this case. Even if [Cole's] trial counsel was ineffective, [he] has not shown that he was so prejudiced that there would have been a different result in this case. [Cole's] Appellate counsel was, therefore, not ineffective for failing to raise these issues on appeal.

Cole appeals.

### III. ASSIGNMENT OF ERROR

Cole assigns that the district court erred in denying his motion for postconviction relief without an evidentiary hearing.

## IV. STANDARD OF REVIEW

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *Id.* When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

## V. ANALYSIS

### 1. GENERAL PRINCIPLES OF LAW

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *Id.* Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Lessley, supra*. The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution. *Id.*

However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Lessley, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Lessley, supra.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The likelihood of a different result must be substantial, not just conceivable. *Id.* The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id.*

## 2. Ineffective Assistance of Counsel

Cole assigns that the district court erred by denying his claims of ineffective assistance of counsel without conducting an evidentiary hearing. The argument section of Cole's brief focuses on the district court's determination that his claims against trial counsel are procedurally barred, and that appellate counsel was not ineffective for failing to assign as error trial counsel's failure to interview and investigate witnesses, or to independently test evidence.

While Cole inserted one sentence referring to trial counsel not objecting to jury instructions and not filing a motion to quash the information, he does not provide any further discussion or argument as to those claims and we therefore will not address them. See *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023) (alleged error must be both specifically assigned and specifically argued; conclusory assertions unsupported by coherent analytical argument fail to satisfy requirement of arguing assigned error to obtain consideration by appellate court).

### (a) Trial Counsel

On direct appeal, Cole, represented by new counsel, claimed that his trial counsel was ineffective for failing to challenge the lack of evidence regarding a material element of the crime. We concluded that claim failed. See *State v. Cole*, No. A-21-1020, 2022 WL 4137235 (Neb. App. Sept. 13, 2022) (selected for posting to court website).

In his pro se motion for postconviction relief, Cole claimed for the first time that his trial counsel was ineffective because counsel failed to: (1) object to specified jury instructions; (2) "interview and investigate" five named witnesses (Rice, Marshall, Leuty, Blueford, and Mason) and the named victim (Ragland) who all "would have testified that they did not see . . . Cole start any fire"; (3) request "independent testing of a water bottle located by Lincoln Fire and Rescue Investigator Schmi[d]t, containing an unknown liquid, which would have concluded that the unknown liquid was in fact water"; and (4) file a motion to quash the information which was not sworn to under oath by the deputy Lancaster County attorney.

We agree with the district court that Cole's postconviction relief claims against trial counsel are procedurally barred because they were not brought on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

### (b) Appellate Counsel

In contrast, this postconviction proceeding was Cole's first opportunity to assert that his appellate counsel was ineffective. A claim of ineffective assistance of appellate counsel which could not have been raised on direct appeal may be raised on postconviction review. *State v. Stelly*, 308 Neb. 636, 955 N.W.2d 729 (2021). However, we find that the district court did not err in denying, without an evidentiary hearing, Cole's claim for postconviction relief based on the alleged ineffective assistance of appellate counsel.

Again, we note that the argument section of Cole's brief focuses on the district court's decision regarding appellate counsel failing to assign as error trial counsel's failure to interview and investigate witnesses, or to independently test evidence. We limit our focus accordingly.

*(i) Witnesses*

Cole claims that his appellate counsel was ineffective for failing to assign as error on direct appeal trial counsel's ineffective assistance in failing to "interview and investigate" five named witnesses (Rice, Marshall, Leuty, Blueford, and Mason) and the named victim (Ragland) who all "would have testified that they did not see . . . Cole start any fire."

When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the *Strickland* test. *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022). If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id.* Much like claims of ineffective assistance of trial counsel, the defendant must show that but for appellate counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different. *Id.*

As this court stated on direct appeal,

> Fire Marshal Schmidt testified that he employed a systematic fire investigation approach to determine that the fire originated on the couch in the living room and that the fire "had to [have been] ignited by human hands." It was also demonstrated that Cole was the only person in Ragland's apartment at the time the fire started. Moreover, Rice, Ragland, and Cole testified that the morning of the fire, Ragland and Cole had been arguing about Cole's alleged infidelity. Following this disagreement, Cole had been "blowing up" Ragland's phone but did not receive many responses from her. Then, approximately 10 minutes after she left the apartment, Ragland received a Snapchat video from Cole showing her couch on fire.

*State v. Cole, supra* at *3 (brackets in original).

The evidence presented at trial showed that Cole was the only person in the apartment at the time the fire started, and that the fire was started by human hands. Having six people who, as Cole claimed, "would have testified that they did not see . . . [Cole] start any fire" would not have undermined confidence in the outcome of this case, thus Cole cannot show prejudice by any alleged deficiency by trial counsel. Because Cole could not show that trial counsel was ineffective for failing to interview and investigate the named persons, Cole was not prejudiced by appellate counsel's failure to raise the claim. See *State v. Cullen, supra*.

*(ii) Water Bottle*

Cole also claims that his appellate counsel was ineffective for failing to assign as error on direct appeal trial counsel's ineffective assistance in failing to request "independent testing of a water bottle located by Lincoln Fire and Rescue Investigator Schmi[d]t, containing an unknown liquid, which would have concluded that the unknown liquid was in fact water."

Fire Marshall Schmidt testified at trial that the contents of the water bottle were analyzed at a laboratory and found to be a medium petroleum distillate ignitable liquid. Thus, Cole's claim that the water bottle contained only water was contradicted by the record. Regardless, whether or not the water bottle contained only water or some other liquid would not have undermined confidence in the outcome of this case. As stated above, the evidence presented at trial was that

Cole was the only person in the apartment at the time the fire started, and that the fire was started by human hands. Thus, Cole cannot show prejudice by any alleged deficiency by trial counsel. Because Cole could not show that trial counsel was ineffective for failing to request independent testing of the water bottle, Cole was not prejudiced by appellate counsel's failure to raise the claim. See *State v. Cullen, supra*.

## VI. CONCLUSION

For the reasons stated above, we find that Cole's claims that trial counsel was ineffective are procedurally barred, and his claims that appellate counsel was ineffective fail. Accordingly, we affirm the decision of the district court denying Cole's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.