Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/18/2022 09:06 AM CST

State of Nebraska, appellee, v.
Tyeric L. Lessley, appellant.

___ N.W.2d ___

Filed August 26, 2022.    No. S-21-768.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Judgments: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.

3. **Appeal and Error.** Alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by an appellate court.

4. **Postconviction: Constitutional Law: Judgments.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

5. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

6. **____: ____: ____.** The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution.

7. **Postconviction: Pleadings.** The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make

a preliminary determination as to whether an evidentiary hearing is justified.

8. **Postconviction: Constitutional Law: Proof.** An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.

9. **Postconviction: Proof: Appeal and Error.** When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.

10. **Records: Appeal and Error.** The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions.

11. **Appeal and Error.** When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

12. **Trial: Appeal and Error.** An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal.

13. **Postconviction.** The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity.

14. **Postconviction: Appeal and Error.** A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and which were or could have been litigated on direct appeal.

15. **Judgments: Claim Preclusion.** Claim preclusion bars litigation of any claim that has been directly addressed or necessarily included in a former adjudication, as long as (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

16. **Records: Appeal and Error.** It is the appellant's responsibility to present a record that permits appellate review of the issue assigned as error.

17. **Postconviction: Appeal and Error.** When the defendant is represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief.

18. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

19. ____: ____. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.

20. ____: ____. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. The likelihood of a different result must be substantial, not just conceivable.

21. **Effectiveness of Counsel: Presumptions: Proof.** The two prongs of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.

22. **Postconviction.** In a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing.

23. ____. Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists.

24. **Trial: Constitutional Law: Testimony: Attorney and Client: Waiver.** A defendant has a fundamental constitutional right to testify, and the right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone.

25. **Trial: Attorney and Client: Testimony.** Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make.

26. **Trial: Attorney and Client: Effectiveness of Counsel: Testimony: Waiver.** Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her

freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable.

27. **Postconviction: Effectiveness of Counsel: Testimony: Proof.** In a postconviction action, when a defendant raises a claim of ineffective assistance of trial counsel related to counsel's failure with regard to advising the defendant on his or her right to testify, an appellate court subjects the claim to the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), standard and requires the defendant to show how trial counsel's alleged deficient performance prejudiced the defense.

28. **Postconviction: Appeal and Error.** In an appeal from the denial of postconviction relief, an appellate court will not consider for the first time on appeal claims that were not raised in the verified motion.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Affirmed.

Tyeric L. Lessley, pro se.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

# I. INTRODUCTION

The defendant challenges the district court's denial of his motion for postconviction relief without holding an evidentiary hearing. The defendant alleged in the motion multiple errors committed by the trial court and multiple claims of ineffective assistance of trial counsel. The district court found that each of the allegations were either procedurally barred, insufficiently alleged, or affirmatively refuted by the record. We affirm.

# II. BACKGROUND

## 1. Convictions

Tyeric L. Lessley was charged with first degree murder under alternative theories of premeditated murder or felony

murder, in violation of Neb. Rev. Stat. § 28-303(1) and (2) (Reissue 2016); two counts of use of a deadly weapon to commit a felony, in violation of Neb. Rev. Stat. § 28-1205(1)(a) and (c) (Reissue 2016); first degree assault, in violation of Neb. Rev. Stat. § 28-308 (Reissue 2016); and possession of a firearm by a prohibited person, in violation of Neb. Rev. Stat. § 28-1206(1)(a)(b) (Reissue 2016).

Lessley filed a motion to suppress all evidence obtained from a cell phone search. After a hearing, the motion to suppress was denied. The district court held that Lessley waived his right to speedy trial.

Before Lessley's 5-day jury trial began, the State was allowed to amend its information by interlineation to remove the premeditated murder theory of proof with regard to the first degree murder charge. At trial, the State pursued the remaining theory of felony murder.

Further details may be found in this court's opinion on direct appeal,[1] but the evidence at trial generally showed as follows:

(a) Events of October 29, 2016

Between 4 and 4:30 a.m. on October 29, 2016, Curtis Goodwin was paying bills on his laptop computer in the home shared with his fiance, Suzanne Pope, in Omaha, Nebraska, while Pope was sleeping in a bed in the main floor living room of the residence, which the couple used as their bedroom.

During this time, Goodwin left the home through the back door to investigate a knocking sound he heard at the front of the house. Goodwin testified that family and friends never used the front door of the residence, but instead entered and exited through the rear door.

Goodwin grabbed a baseball bat before leaving the house. Goodwin then walked around to his front door, where he discovered a man knocking on the door. Goodwin asked the man if he could help him. The man pointed a gun in Goodwin's face

---

[1] *State v. Lessley*, 301 Neb. 734, 919 N.W.2d 884 (2018).

and responded, "Yeah, n-----, I'm your worst mother f------ nightmare." The man, whom Goodwin testified he did not recognize, then told Goodwin to go into the house.

The two walked around the side of the house to the back entrance. Goodwin testified that at some point along the way, he dropped the bat. Once inside, the man told Goodwin to "give me all your money and your shit." Goodwin woke Pope to tell her that someone was there to rob them. According to Goodwin, both he and Pope told the intruder they did not have any money. At that point, the intruder shot Pope, took Goodwin's laptop, and shot Goodwin as Goodwin lunged at him.

Goodwin was able to follow the intruder out of the house and into the backyard, where Goodwin collapsed as the intruder ran down the street carrying Goodwin's laptop. At this time, Goodwin noticed an unfamiliar dark-colored Chevrolet Suburban or Tahoe parked in his driveway, which was located in the backyard of the residence. Goodwin testified that this vehicle had no license plates and described the back doors as opening "like kitchen cabinets." The intruder walked back past Goodwin. By this time, Goodwin had retrieved the bat he dropped earlier and swung it in the direction of the intruder. Goodwin testified that he hit "something," but did not know if it was the intruder. The intruder then shot Goodwin again, dropped the laptop, and drove away.

Pope was killed and Goodwin was injured in this incident. Goodwin was in a coma for nearly 3 months and sustained the loss of one of his kidneys, his spleen and gallbladder, and several feet of his small intestine. Complications from his injuries caused Goodwin to fall into a second coma, during which he nearly died.

"Shotspotter" evidence corroborated the timing of the gunshots. Shotspotter is a technology utilized by the Omaha Police Department to determine the location of gunshots based upon sounds captured by microphones positioned in certain parts of the city. Here, Shotspotter captured the sound of two gunshots

at 4:30 and 4:31 a.m., 20 seconds apart, sounding from out-side Goodwin and Pope's residence. Neighbors also testified they heard gunshots around that time.

In addition, neighbors witnessed a vehicle travel west from the residence after they heard the gunshots. One neighbor testified that she saw a dark blue, green, or black Suburban or Tahoe. A second neighbor testified that he witnessed a dark-colored Suburban or Tahoe with a loud exhaust, custom wheels, and tinted windows, and that based upon his experi-ence with vehicles, he estimated the vehicle was between a 1996 and 1999 model.

### (b) DNA and Other Evidence

Goodwin's laptop computer was found in the backyard near the driveway. It had a partial shoeprint on its cover. A tread expert testified that the shoeprint was consistent with a Nike "Shox" tennis shoe.

Various items of evidence were also recovered from the scene and tested. The State's DNA expert testified that the blood and baseball bat found at the scene were both swabbed and tested. Each produced a statistical match to Lessley's DNA.

Law enforcement later determined that on October 12, 2016, Lessley had purchased a 2001 green Chevrolet Suburban from an Omaha dealership. That dealership had global positioning system records placing the Suburban less than a mile southeast of the Goodwin-Pope residence at 4:18 a.m. on October 29. One of the investigating officers testified that it had taken him about 2 minutes to drive from the residence to the location noted in the global positioning system records.

Lessley was arrested in January 2017. At the time of arrest, Lessley was wearing a pair of Nike Shox shoes, which were consistent with the shoeprint found on the laptop computer. Lessley's Suburban was impounded at the time of his arrest. The Suburban still had in-transit signs and no license plates. It also had tinted windows, "barn-door" style rear doors, and

a louder-than-stock exhaust. A search of Lessley's residence recovered custom aftermarket rims.

At the time of the shooting, Lessley and his girlfriend lived a 3-minute drive northwest of the Goodwin-Pope residence. Lessley's girlfriend testified that Lessley returned from work on October 28, 2016, between 11:45 p.m. and 12 a.m. She fell asleep shortly after Lessley returned home and was awoken before 5:30 a.m. by Lessley's talking on the telephone. At this time, Lessley's girlfriend noticed a "hole" in the right side of Lessley's forehead that he did not have when he came home from work. Lessley's cell phone records show that he was on the cell phone between 4:58 and 5:06 a.m. on October 29.

The jury was instructed only on the felony murder theory and was not instructed as to any other theory of first degree murder, or as to any other degree of murder. Lessley did not object to the instructions as given and did not offer any proposed instructions.

The jury found Lessley guilty on all five counts. At the sentencing hearing, the district court initially sentenced Lessley to life imprisonment for first degree murder, 20 to 20 years' imprisonment for first degree assault, 3 to 3 years' imprisonment for possession of a deadly weapon by a prohibited person, and 5 to 5 years' imprisonment on both use of a deadly weapon to commit a felony convictions. After counsel for the State and for Lessley raised the issue of indeterminate sentences, telling the district court that the sentences had to be different, the district court amended its sentences for counts II through V, where it added 1 day to the maximum term of each sentence so the minimum and maximum terms would not be the same. All sentences were ordered to be served consecutively.

## 2. Direct Appeal and Resentencing

On direct appeal, Lessley, with trial counsel, assigned that there was insufficient evidence to support his convictions

and that the district court erred in not instructing the jury on the lesser-included offense of manslaughter. This court affirmed Lessley's convictions and determined that the district court did not err when it did not instruct the jury on manslaughter. However, this court found plain error in the sentences imposed for counts II through V. This court concluded that the original sentences imposed for these convictions were valid because the maximum term imposed by the court (5 years and 3 years) was not greater than the maximum term provided for by law (50 years) and the minimum term was the minimum term provided for by law (5 years and 3 years), as set forth in Neb. Rev. Stat. § 29-2204(1)(b) (Reissue 2016). Therefore, this court vacated the modified sentences and remanded the cause for resentencing in conformity with the initial sentences of 5 to 5 years' imprisonment for each use conviction and 3 to 3 years' imprisonment for the possession conviction.

### 3. Postconviction Proceedings

Lessley filed a timely motion for postconviction relief. The motion alleged various claims of ineffective assistance of counsel at trial and on direct appeal and numerous claims of error by the trial court. Many claims made in Lessley's postconviction motion have not been raised in his appeal.

Relevant to the issues being raised on appeal, Lessley asserted in his postconviction motion that his trial counsel was ineffective for (1) advising him to waive his speedy trial rights, (2) failing to interview potential witnesses, (3) refusing to allow Lessley to testify regarding an extramarital affair he had with Pope and an altercation that ensued between him and Goodwin, (4) failing to present readily available expert testimony such as a serology expert, and (5) failing to object to the State's amendment of the first degree murder charge on the first day of trial. Lessley further asserted that his appellate counsel was ineffective for failing to raise on appeal the district court's error in allowing the State to amend its information on the first day of trial and his excessive sentences

issue. Lessley also claimed the district court erred when ruling on the motion to suppress and instructing the jury. Lessley alleged his trial counsel was ineffective for failing to successfully pursue the motion to suppress and object to erroneous jury instructions at trial and was ineffective on appeal for failing to pursue those issues.

The district court entered a written order denying Lessley's motion for postconviction relief without an evidentiary hearing, finding that each of the claims were either procedurally barred, insufficiently alleged, or affirmatively refuted by the record.

## III. ASSIGNMENTS OF ERROR

Lessley assigns, consolidated and restated, that the district court erred when it (1) denied his request for appointment of postconviction counsel without a hearing, (2) denied his motion for postconviction relief without allowing the State to respond, and (3) denied his motion for postconviction relief without an evidentiary hearing as being without merit or procedurally barred. He also assigns that the district court erred during the trial stage of his proceedings by (1) failing to suppress evidence derived from an unlawful search warrant and supporting affidavit, (2) failing to find the State's use of peremptory challenges to exclude jurors of a specific racial class violated his rights to due process and equal protection, (3) abusing its discretion by supporting a verdict that was insufficient to support his conviction for first degree murder, and (4) giving certain jury instructions.

## IV. STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[2]

---

[2] *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022).

[2] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law.[3] When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[4]

[3] Alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by an appellate court.[5]

## V. ANALYSIS

Lessley asserts on appeal, broadly, that the district court erred in denying postconviction relief without first conducting an evidentiary hearing and in determining that his claims are without merit and are procedurally barred. More specifically, Lessley asserts multiple errors by the trial court and multiple claims of ineffective assistance of counsel.

Before addressing the specific claims of postconviction relief that Lessley believes the court should have held an evidentiary hearing on, we set forth the general legal principles governing our analysis of appeals from the denial of postconviction claims without an evidentiary hearing and dispose of any claims Lessley raised that are procedurally barred or not properly before us for appellate review.

[4-6] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[6]

---

[3] *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022).

[4] *Id*.

[5] *Id*.

[6] *Cullen, supra* note 2.

The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution.[7]

[7,8] However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified.[8] An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.[9]

[9,10] When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.[10] The appellate court does not conduct this review sua sponte, however; as with all appeals, the alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by the appellate court.[11] The appellate court will not scour the record on appeal to understand unclear arguments or find support for broad conclusions.[12]

---

[7] *Id.*; *Jaeger, supra* note 3.

[8] *Jaeger, supra* note 3.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

## 1. Claims Not Properly Brought
### for Appellate Review

With these general principles in mind, this court notes that Lessley assigns many errors on appeal that he does not specifically argue in his brief. Lessley assigns that the district court erred in denying his request for appointment of counsel without a hearing, failing to suppress evidence derived from an unlawful search warrant and supporting affidavit, failing to find the State's use of peremptory challenges to exclude jurors of a specific racial class violated his rights to due process and equal protection, and supporting a verdict based on evidence that was insufficient to support a conviction of Lessley as guilty beyond a reasonable doubt for felony murder. These errors were not specifically argued in Lessley's appellate brief, and we accordingly decline to consider these assignments in this appeal.

[11,12] Other issues that are not properly before an appellate court for review are issues that are not preserved below. A motion for postconviction relief must mirror the arguments made in a party's appellate brief because we have said that when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[13] Therefore, an issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal.[14]

Lessley asserts in one general statement in his brief that "[t]rial counsel rendered ineffective assistance of counsel by not making proper objections to evidence discovered in violation of [Lessley's] 4th amendment right to be free from unreasonable search and seizure."[15] Lessley words this allegation in his motion for postconviction relief as "[t]rial counsel

---

[13] See *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012).

[14] *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

[15] Brief for appellant at 11.

rendered ineffective assistance of counsel when said counsel fumbled what should have been a successful motion to suppress evidence seized pursuant to the search warrant of his home, cell phone[,] and the questioning of his minor daughter . . . without a guard[ian] present at [the] interview." These allegations are different. One focuses on the pretrial motion to suppress hearing, and the other focuses on trial counsel's failure to object to the evidence received at trial after the motion to suppress was denied.

Lessley also contends in his appellate brief that counsel was ineffective because counsel failed to object to the court's continued delay of pretrial proceedings and that this caused him to unknowingly waive his speedy trial right. In contrast, in his motion, Lessley alleged that trial counsel was ineffective for advising him to waive his statutory right to speedy trial and argued that if he had not done so, the prosecution would have been pressed to move forward with trial with less than 30 days on the speedy trial clock.

With both of these issues, Lessley is asserting for the first time on appeal that trial counsel was ineffective for failing to object during trial, but he raised different allegations in his motion for postconviction relief. Since the district court was not presented with these arguments, and thus did not decide whether trial counsel was ineffective for failing to object, it is inappropriate for this court to consider them on appeal.

## 2. Claims That Are Procedurally Barred

Lessley also assigns and argues errors that the district court correctly determined are procedurally barred. Lessley contends that the district court abused its discretion when it "meted out an invalid indeterminate sentence by imposing a fix[ed] indeterminate sentence plus one day" and when it "failed and/or neglected to adjudicate this claim on postconviction relief."[16] Further, Lessley raises an issue with the jury instructions given

---

[16] *Id.* at 13 and 14.

at trial, asserting that the trial court improperly defined reasonable doubt as a lower standard by which the State had to prove him guilty and in giving an instruction regarding the elements of "intent" because "[i]ntent is a mental element of the crime of [f]irst degree [m]urder (felony) and assault in the [f]irst [d]egree" and "[t]he trial court failed to give proper instructions of willful, knowingly, with specific intent to [commit] the allege[d] crime, resulting in prejudice to [Lessley]."[17]

On direct appeal,[18] Lessley contended that the district court erred in not instructing the jury on the lesser-included offense of manslaughter and that there was insufficient evidence to support his convictions. The State raised the issue of Lessley's sentences. We affirmed Lessley's convictions and determined that it was not error for the district court to not instruct the jury on manslaughter. We also determined that the district court's modifying Lessley's sentences by adding 1 day to his maximum sentences was an invalid modification because the original sentences for the use and possession convictions were valid. We remanded the cause for resentencing, directing the district court to resentence Lessley according to the original sentences imposed.

Lessley attempts to argue again that his sentences with 1 day added were invalid indeterminate sentences. Lessley's argument fails to take into account that these are no longer his sentences based on our remand in his direct appeal. Further, his motion attempts to argue that other jury instructions were incorrect. Since we considered a different issue regarding the instructions to the jury in his direct appeal, these issues should have been known to Lessley and should have been raised on his direct appeal. Therefore, we decline to consider these arguments here.

[13-15] The need for finality in the criminal process requires that a defendant bring all claims for relief at the first

---

[17] *Id.* at 9.

[18] *Lessley, supra* note 1.

opportunity.[19] We have consistently said that a motion for post-conviction relief cannot be used to secure review of issues that were known to the defendant and which were or could have been litigated on direct appeal.[20] To the extent these arguments are being raised for the first time in relation to his motion for postconviction relief, they have not been brought at the first opportunity. To the extent these issues were raised and directly addressed or necessarily decided in our decision on direct appeal, they are barred by claim preclusion. Claim preclusion bars litigation of any claim that has been directly addressed or necessarily included in a former adjudication, as long as (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.[21]

### 3. Due Process

An issue that is properly before us and appropriate for appellate review is Lessley's contention that the district court erred when it failed to allow the State the opportunity to respond to his motion for postconviction relief before ruling upon it. Lessley acknowledges that the petitioner has the burden of pleading and proving the facts necessary to entitle him to relief, but he argues that the State had the burden of pleading grounds of preclusion and then the burden returns to the petitioner to disprove the preclusion's existence. He asserts that because the State was "never given the opportunity to respond," the record was not complete for the district court to make a factual finding.[22]

Lessley's motion for postconviction relief was filed on February 3, 2020, and the district court's order denying

---

[19] *State v. Jackson*, 296 Neb. 31, 892 N.W.2d 67 (2017).

[20] *State v. Betancourt-Garcia*, 310 Neb. 440, 967 N.W.2d 111 (2021).

[21] *State v. Marrs*, 295 Neb. 399, 888 N.W.2d 721 (2016).

[22] Brief for appellant at 7.

Lessley's motion was filed on September 1, 2021. Lessley asserts in his brief that "[i]t has been the formal policy of the Douglas County District Court judges to allow the State 60 to 90 days to respond to formal pleading of postconviction once the court has had an opportunity to review the postconviction pleading."[23] While this may be true, the State had substantially more time than 60 to 90 days to respond to Lessley's motion if it wished to.

The State was not required to respond to Lessley's motion for postconviction relief, and the district court was not in error in failing to order the State to respond. Neb. Rev. Stat. § 29-3001(2) (Reissue 2016) states, in relevant part:

> Unless the motion and the files and records of a case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney, grant a prompt hearing thereon, and determine the issues and make findings of fact and conclusions of law with respect thereto.

In *State v. Burries*,[24] we declined to conclude that the State has an obligation to raise issues concerning a postconviction action at a time prior to that mandated by the statute. In *Burries*, the State had filed a motion to dismiss in response to the defendant's first motion for postconviction relief. The defendant later filed a second amended motion for postconviction relief and argued on appeal that when the State failed to file a brief in response, the State effectively withdrew its motion to dismiss and conceded that he was entitled to relief. We acknowledged that though the State, through its county attorneys, can, and often does, participate at earlier points in the process, the State is only called upon to take action with respect to a motion once it receives notice from the court. And, under § 29-3001(2), that notice is only mandated once the court determines that a prisoner is entitled to a hearing. Therefore,

---

[23] *Id.* at 7-8.

[24] *State v. Burries*, 310 Neb. 688, 969 N.W.2d 96 (2022).

we declined to conclude that the State has an obligation prior to the notice mandated through § 29-3001(2) to respond to a petitioner's motion for postconviction relief.

Similarly here, the district court determined that Lessley was not entitled to an evidentiary hearing on any claim he raised in his motion for postconviction relief. Therefore, the court was never required to provide notice to the State to issue a response, and the State was not obligated to provide a response to Lessley's motion. Thus, the district court did not err in ruling on Lessley's motion for postconviction relief without first receiving a response from the State.

[16] To the extent Lessley argues the record was not complete without the State's response, we reiterate that it is the appellant's responsibility to present a record that permits appellate review of the issue assigned as error.[25] Therefore, Lessley could not depend on any action from the State in order for the record to be complete for the district court to make a decision or for the appellate court to review its decision. The district court's decision regarding whether a motion for postconviction relief is entitled to an evidentiary hearing is based solely on the facts alleged in the petitioner's motion and the files and records of the case, which need not require a response from the State.[26]

## 4. Ineffective Assistance of Counsel

[17] Lessley's remaining contentions are ineffective assistance of counsel claims. Generally, a motion for postconviction relief cannot be used to secure review of issues that were or could have been litigated on direct appeal. However, when, as here, the defendant is represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief.[27]

---

[25] *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017).

[26] See § 29-3001.

[27] *Jaeger, supra* note 3.

[18-21] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[28] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[29] To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. The likelihood of a different result must be substantial, not just conceivable.[30] The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.[31]

Lessley asserts that trial counsel was ineffective when counsel (1) failed to interview and investigate potential alibi witnesses, (2) refused to allow him to testify, (3) did not make readily available expert witnesses, and (4) failed to object to the State's amendment of the information. We will discuss each of these claims individually.

### (a) Failure to Investigate or Interview Alibi Witnesses

Lessley argues that trial counsel was ineffective because counsel failed to interview and investigate potential alibi

---

[28] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[29] *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).

[30] *Id.*

[31] *Cullen, supra* note 2.

witnesses, such as Cordell Westbrook. Lessley asserts that Westbrook would have given testimony that he was with Lessley between 1:30 and 4:30 a.m. on October 29, 2016. Lessley argues that "[h]ad counsel interviewed and investigated . . . Westbrook as part of his trial investigation of the facts of the case, compelling testimony likely would have been given resulting in [Lessley's] acquittal of aforemention[ed] charge to which the jury found him guilty."[32]

In his motion for postconviction relief, Lessley added the allegation that Westbrook would have testified that he observed the "scar" on Lessley's head at that time; however, we will not consider this allegation in our analysis because it was not alleged in Lessley's brief. An appellate court considers errors that are both specifically assigned and specifically argued in the brief of the party asserting the error and will not read the brief together with a motion for postconviction relief in order to discern what the appellant's complete argument is.

[22,23] A defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing.[33] Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists.[34]

In *State v. Munoz*,[35] we determined the defendant's allegations regarding witness testimony did not warrant an evidentiary hearing because they were insufficiently specific. In *Munoz*, the defendant alleged in his motion for postconviction relief that trial counsel was deficient in failing to depose or interview certain named witnesses who had knowledge of his whereabouts during the crime. The defendant claimed one

---

[32] Brief for appellant at 11.

[33] *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021).

[34] *Id*.

[35] *Id*.

named witness' testimony would have presented a rebuttable presumption to the State's theory of how he allegedly murdered the victim and "'would have contradicted the [S]tate's evidence underlining proof of [his] alibi during the time of the victim's murder.'"[36] But the defendant did not elaborate as to this potential testimony in any further detail. As to this witness, we concluded that the defendant's allegations consisted entirely of legal conclusions and conclusions of fact without supporting facts.

The defendant in *Munoz* also alleged that another named witness had engaged in a conversation with the defendant's son that was instrumental to his desire to travel out of town during the time the crime took place and that this testimony would have been pivotal because the witness possessed knowledge of the events leading to the defendant's desire to travel. While the facts alleged by the defendant were more specific regarding the witness' testimony, we found it was still insufficient to warrant an evidentiary hearing. We explained that the defendant failed to allege when the conversation regarding his desire to travel with the witness took place—specifically whether the conversation took place before the murder—and the testimony would not have been exculpatory under the facts of the case because the alleged alibi was for when the victim, who had been murdered several days before, was found, not when she was murdered. We also noted that the testimony would have been inadmissible hearsay.

In contrast, we found the facts alleged by the defendant in *State v. Stricklin*[37] were sufficient to show, if proved, both deficient performance and prejudice regarding his alibi defense. In *Stricklin*, the defendant alleged that on the day of the crimes, he took his stepson to a barber shop at 10 a.m., left the barber shop around noon, and drove to his grandmother's house, during which drive he made a call on his cell phone at 12:34 p.m.

---

[36] *Id.* at 295, 959 N.W.2d at 812.

[37] *Stricklin, supra* note 29.

The defendant alleged that four specifically named witnesses and his cell phone records would corroborate this alibi. At trial, the State relied on cell phone evidence that linked the defendant and his codefendant to the crime scene between 11:42 a.m. and 12:36 p.m. We noted that, based on the State's theory of the case, the crimes occurred during the general time period the defendant's alleged alibi witnesses would confirm he was someplace else. Since the defendant alleged that counsel knew of this alibi information and was deficient in failing to present it, we found that the defendant had alleged facts which, if proved, were sufficient to show both deficient performance and prejudice regarding his alibi defense and that the defendant was entitled to an evidentiary hearing on whether trial counsel was ineffective for failing to file notice of and present evidence of the defendant's alibi defense.

While Lessley alleged Westbrook would have attested that he was with Lessley between 1:30 and 4:30 a.m. on the day of Pope's murder and Goodwin's assault, he did not allege where Westbrook would have testified he and Lessley were at those times. Thus, this alleged potential testimony was not inconsistent with Westbrook's being with Lessley outside of the victims' house. Unlike in *Stricklin*, it was not potential evidence that Lessley was somewhere else. It was not alibi evidence. The allegation that had counsel interviewed and investigated Westbrook as part of his trial investigation of the facts of the case, "compelling testimony likely would have been given resulting in [his] acquittal,"[38] is a factual conclusion and also insufficient.

The district court did not err in denying Lessley's motion without an evidentiary hearing on this claim.

(b) Refusal to Allow Lessley to Testify

Lessley asserts that trial counsel was ineffective because counsel refused to allow him to testify to an extramarital affair with Pope and the altercation that ensued between him and

---

[38] Brief for appellant at 11.

Goodwin between 12:30 and 1:15 a.m. the night of Pope's murder. Lessley argues that had this testimony been presented to the jury, it would have explained some of the circumstantial evidence present at the crime scene, which we presume means his DNA and his shoe print on Goodwin's laptop.

[24-27] A defendant has a fundamental constitutional right to testify, and the right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone.[39] Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify, of the strategic implications of each choice, and that the choice is ultimately for the defendant to make.[40] Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance of counsel in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable.[41] In a postconviction action, when a defendant raises a claim of ineffective assistance of trial counsel related to counsel's failure with regard to advising the defendant on his or her right to testify, we have subjected the claim to the *Strickland* standard and required the defendant to show how trial counsel's alleged deficient performance prejudiced the defense.[42]

Lessley does not specifically allege supporting facts that show how counsel interfered with his decision on whether to testify or if counsel's advice to waive his right to testify was unreasonable. Lessley provides no detail regarding what discussions he had with counsel that would show counsel interfered with his right to testify and little detail as to what his testimony actually would have been. His allegation that counsel refused to let him testify to an extramarital affair

---

[39] *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018).

[40] *Cullen, supra* note 2.

[41] *Stricklin, supra* note 29.

[42] *Cullen, supra* note 2.

with Pope and an altercation between him and Goodwin is a conclusory factual statement that is insufficient without supporting facts.

Lessley failed to allege sufficient facts that, if proved, would show counsel's performance was ineffective with respect to Lessley's right to testify. The district court did not err when it denied this claim without an evidentiary hearing.

### (c) Failure to Offer Expert Witnesses

Lessley contends that trial counsel did not perform as a competent attorney because counsel did not make readily available expert witnesses who would have presented scientific and forensic testimony to "refute the State's evidence."[43] More specifically, Lessley asserts that had counsel elicited testimony of a serology expert, "an expert would have testified the bloodspatter from the baseball bat and laptop was a mixture of . . . Goodwin and possibly [Lessley]" and would have "testified to the [n]ew testing procedures and the flaw[ed] testing procedures use[d] by the State[']s forensic department."[44] Lessley generally asserts that the failure to consult with an expert prejudiced his defense.

[28] We will not consider Lessley's argument that this expert would have testified to the flawed testing procedures by the State because this allegation does not appear in Lessley's motion for postconviction relief. In an appeal from the denial of postconviction relief, we will not consider for the first time on appeal claims that were not raised in the verified motion.[45]

As for the remaining assertions, Lessley fails to allege how a serology expert's testimony that the blood spatter was a mixture of Goodwin's and Lessley's blood would have changed the outcome of the trial. Lessley does not seem to dispute that at least some of the blood on the bat was his, and in light of

---

[43] Brief for appellant at 12.

[44] *Id.*

[45] *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021).

all the evidence offered against him at trial, it is unclear how this expert testimony that would "refute the State's evidence" would be enough to alter the outcome of the trial.

Again, the facts Lessley alleges are insufficient to require an evidentiary hearing. The district court did not err in denying an evidentiary hearing on the alleged ineffectiveness of failing to elicit testimony of a serology expert.

### (d) Failure to Object to Amendment of Information

Finally, Lessley generally asserts trial counsel was ineffective because counsel failed to object to the State's amending the information on the first day of trial. Lessley argues that this prejudiced him "in that there was no time to prepare for the new charges."[46]

The record affirmatively refutes this. The State is correct when it argues that there was no prejudice to Lessley. The State did not change or add charges when it amended the information; rather, it simply removed one of the theories of first degree murder that Lessley had been charged with. The State removed the premeditated murder theory and proceeded to trial on only the felony murder theory. Therefore, Lessley did not have to "prepare for the new charges"[47] or "prepare and present a new defense strategy" as he asserts. Lessley fails to allege facts to show that he was prejudiced by this amendment and that counsel was ineffective for failing to object to it. The district court did not err in denying Lessley an evidentiary hearing on this claim.

### VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying Lessley's motion for postconviction relief without an evidentiary hearing.

Affirmed.

---

[46] Brief for appellant at 12.

[47] *Id.*