IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. NAGEL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

VINCENT R. NAGEL, APPELLANT.


Filed April 14, 2026.    Nos. A-25-568, A-25-569.


Appeals from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Kenneth Jacobs, of Hug and Jacobs, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.


RIEDMANN, Chief Judge, and BISHOP and WELCH, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

Vincent R. Nagel appeals from the denial of his motions for postconviction relief without an evidentiary hearing in two separate cases in the district court for Hall County. The cases have been consolidated for disposition by this court. Following our review, we affirm.

## BACKGROUND

In October 2022, Nagel pled no contest to three charges in two separate cases. He was sentenced in December in both cases at the same hearing, and the cases were consolidated for disposition on direct appeal. Following his unsuccessful appeal, Nagel filed identical motions for postconviction relief in each case. His request for relief arises out of the sentencing recommendation of the plea agreement; therefore, we set forth the facts related to his sentencing.

Nagel and the State reached a plea agreement where Nagel would, in total, plead to three charges between the two cases. Two of the charges included mandatory minimum terms of

- 1 -

imprisonment. The written plea agreement required the State to recommend the sentences be served concurrently and that Nagel "be ordered to serve no more than twenty-two (22) years before he becomes eligible for parole." Rather than recite the plea agreement into the record at the plea hearing, trial counsel filed the written agreement with the district court. In case No. A-25-568, Nagel pled no contest to possession of a deadly weapon by a prohibited person. In case No. A-25-569, he pled no contest to attempted second degree murder and unlawful discharge of a firearm.

At sentencing, trial counsel informed the district court that the State was recommending concurrent sentences for all three counts. He also noted the State was recommending "that the sentence on the bottom number be 22 years. The State is making that with knowledge that good time, as applied in the context of the mandatory minimum which comes along with 2 of the counts, would ultimately result in 12 and a half actual years." The district court asked trial counsel to clarify that the agreement was for 22 years until parole eligibility, and trial counsel stated this was "correct." But trial counsel went on to explain the way in which a sentence of 22 years, accounting for the mandatory minimum term and the application of good time credit, would result in Nagel being parole eligible in 12½ years. When the State addressed the district court, it recommended "a bottom number of 22 years on these 2 sentences" as well as concurrent sentences between the cases.

For his conviction in case No. A-25-568, Nagel received a sentence of 10 to 30 years' imprisonment. For his convictions in case No. A-25-569, Nagel received sentences of 30 to 50 years' imprisonment for each count, to be served concurrently to each other but consecutively to the sentence in case No. A-25-568. Nagel, represented by trial counsel, filed a direct appeal, assigning in part that the district court erred by allowing the State to argue for a sentence more punitive than that contemplated by the plea agreement. This court found Nagel's assigned errors failed, and we affirmed the judgment of the district court. See *State v. Nagel*, Nos. A-23-011 and A-23-012, 2023 WL 7137299 (Neb. App. Oct. 31, 2023) (selected for posting to court website).

Nagel filed verified motions for postconviction relief, asserting claims of ineffective assistance of trial counsel and requesting an evidentiary hearing. Nagel alleged that trial counsel was ineffective in failing to correctly (1) draft the written plea agreement and (2) inform the district court of the agreed upon sentencing recommendation at the sentencing hearing. He also alleged that (3) trial counsel misadvised him of his parole eligibility date, and that he would not have entered his pleas if he had been correctly advised.

Nagel alleged that the sentencing recommendation from the plea agreement was that he would serve 12½ years prior to parole eligibility. However, trial counsel drafted the written plea agreement to state that Nagel would serve 22 years before being parole eligible, and trial counsel did not correct this error at the sentencing hearing. Nagel alleged that but for trial counsel misinforming him of the parole eligibility date, he would not have entered into the plea agreement. The district court denied the motions for postconviction relief without an evidentiary hearing.

ASSIGNMENT OF ERROR

Nagel assigns that the district court erred in denying his motions for postconviction relief without an evidentiary hearing.

STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Bershon*, 33 Neb. App. 523, 18 N.W.3d 810 (2025).

On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing. *Id*. Instead, it must be determined whether the allegations were sufficient to grant an evidentiary hearing. *Id*.

ANALYSIS

Nagel assigns that the district court erred in denying his motions for postconviction relief without an evidentiary hearing. We disagree. We first recite the case law relevant to appellate review of denials of motions for postconviction relief without an evidentiary hearing, followed by the case law that governs review of ineffective assistance of trial counsel claims in motions for postconviction relief. We will then address each claim of ineffective assistance of counsel raised in Nagel's motions for postconviction relief.

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id*. The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution. *Id*.

However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id*. An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

When a district court denies postconviction relief without conducting an evidentiary hearing, an appellate court determines de novo whether the petitioner has alleged facts that would support the claim and, if so, whether the files and records affirmatively show that he or she is entitled to no relief. *Id*.

Generally, a motion for postconviction relief cannot be used to secure review of issues that were or could have been litigated on direct appeal. *Bershon, supra*. However, when the defendant is represented both at trial and on direct appeal by the same counsel, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief. See *id*. Here, trial counsel also represented Nagel on direct appeal, and this is his first opportunity to assert claims of ineffective assistance of trial counsel.

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case. *State v. Bershon*, 33 Neb. App. 523, 18 N.W.3d 810 (2025). The two prongs of this test—deficient performance and prejudice—may be addressed in either order, and the entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable. *Id.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To establish prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

When a conviction is based upon a guilty plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019).

*Written Plea Agreement.*

Nagel alleged that trial counsel was ineffective in failing to correctly draft the written plea agreement. In our opinion in Nagel's direct appeal, we noted that "under the plain terms of the written plea agreement, the State was allowed to recommend a sentence that, after good time reductions, would still require Nagel to serve 22 years." *State v. Nagel*, Nos. A-23-011 and A-23-012, 2023 WL 7137299 at *5 (Neb. App. Oct. 31, 2023) (selected for posting to court website). However, the plea agreement reached by the parties was intended to require a sentencing recommendation that would result in Nagel being parole eligible after 12 ½ years.

Drafting a plea agreement that does not accurately reflect the terms agreed to certainly could constitute deficient performance. But to obtain relief on a claim of ineffective assistance of counsel, a defendant must also show that counsel's deficient performance prejudiced the defense in his or her case. See *Bershon, supra*. We find that Nagel cannot show prejudice.

As will be discussed more fully below, trial counsel repeatedly attempted to clarify the intended plea agreement by using 12½ years as the amount of time Nagel would be required to serve under the agreed upon sentencing recommendation and the State ultimately recommended a bottom number that accurately reflected the agreed upon plea agreement. As such, Nagel cannot show he was prejudiced by the incorrect sentencing recommendation in the written plea agreement. Therefore, the records and files affirmatively show that Nagel is not entitled to relief on this claim, and the district court did not err in denying it without an evidentiary hearing.

*Sentencing Hearing.*

Nagel alleged that trial counsel was ineffective in failing to correctly inform the district court of the agreed upon sentencing recommendation at the sentencing hearing. We find no deficient performance.

Despite the language of the written plea agreement, at sentencing, trial counsel advised the sentencing court on several occasions that the intended time served prior to parole eligibility was 12 ½ years. He stated:

The State is recommending concurrent sentences for each count, each of the three counts, and also that the sentence on the bottom number be 22 years. The State is making that with knowledge that good time, as applied in the context of the mandatory minimum which comes along with 2 of the counts, would ultimately result in 12 and a half actual years.

In my discussions with [the State] about this, if the Court doesn't think it's necessarily appropriate for a concurrent sentence, the State still believes that the resulting actual time is a fair outcome of the case. This is a long way of saying however you want to build this house, we don't really care as long as the result is the actual time that we contemplated as a part of the sentencing recommendation.

The district court requested clarification on parole eligibility, to which trial counsel stated, "[B]ecause of the mandatory minimum, [the defendant] would have to serve the first 3 years and then he would get the day-for-day credit, so 22 minus 3 is 19. Half of 19 is 9 and a half. Add the 9 and a half back to the original 3, and you get 12 and a half."

Trial counsel continued:
The State and I came together to try to craft a sentence that would account for all of the bad, a responsibility taking, a reckoning for that. A couple of things we had to assess were: How long does it take a person out of a situation for them to be truly and inextricably divorced from it? I think it's hard to argue that 12 and a half years isn't enough for that.

The State did not object to any of trial counsel's statements and confirmed the agreement, stating "to make sure that I satisfy the plea agreement in this case, the State is recommending concurrent sentences between these two cases. The State is recommending a bottom number of 22 years on these 2 sentences." The State did not add any qualifying language to this recommendation.

Although trial counsel stated it was "correct" that the sentencing recommendation was for 22 years until Nagel was parole eligible, this was not the end of the discussion. The above statements confirm that trial counsel explained the intended plea agreement was to recommend 22 years as the "bottom number," resulting in parole eligibility in 12½ years. The State did not disagree and iterated it was recommending a bottom number of 22 years. When all of trial counsel's statements are considered, the correct sentencing recommendation was conveyed to the court. Nagel failed to show deficient performance.

We recognize that on direct appeal, Nagel assigned error related to the plea agreement. In that case, however, his assigned error was that the district court erred by allowing the State to argue for a sentence more punitive than that contemplated by the plea agreement. Specifically, Nagel argued that the State violated the plea agreement by recommending that the upper number of each sentence imposed be the statutory maximum. See *State v. Nagel*, Nos. A-23-011 and A-23-012, 2023 WL 7137299 (Neb. App. Oct. 31, 2023) (selected for posting to court website).

In addressing this argument, we stated:
Under the plea agreement, the State agreed to recommend that Nagel "be ordered to serve no more than 22 years before he becomes eligible for parole." At sentencing, defense counsel confirmed this phrasing was accurate by informing the court that both parties were recommending that "the sentence on the bottom number be 22 years." The State then recommended "a bottom number of 22 years on these 2 sentences." We first note that *under*

*the plain terms of the written plea agreement*, the State was allowed to recommend a sentence that, after good time reductions, would still require Nagel to serve 22 years. Instead, the State recommended an actual bottom number of 22 years, which with good time credit could result in parole at a substantially earlier point. Further, the plain language of the plea agreement does not place any restrictions on what the State could recommend with respect to the upper limit of Nagel's sentence.

*Nagel, supra* at *5 (emphasis added).

At issue on direct appeal was whether the State breached the plea agreement by recommending a more punitive sentence than what the agreement allowed. In deciding that issue, we observed that the written plea agreement allowed the State to recommend a sentence that required 22 years prior to parole eligibility and it contained no limit on the recommendation of the maximum sentence. And because the State recommended a lower bottom number than what the written plea agreement stated, our analysis did not require us to evaluate whether the agreed upon sentencing recommendation was properly conveyed to the court. Rather, we found the State's recommendation did not violate the parameters of the agreement on either the minimum or the maximum sentence.

In the present case, Nagel's argument is directed at trial counsel's representation of the sentencing agreement to the district court. In analyzing this issue, the record reveals that trial counsel conveyed the correct sentencing recommendation and, therefore, did not perform deficiently in this regard. Because the records and files affirmatively show that Nagel is not entitled to relief on this claim, the district court did not err in denying it without an evidentiary hearing.

*Advice of Counsel.*

Nagel alleged that trial counsel was ineffective because counsel misadvised him of his parole eligibility date, and he would not have entered his pleas if he had been correctly advised. This claim focuses on the actual terms of the parties' agreement, rather than the way those terms were drafted in the written plea agreement or communicated to the district court. We find that Nagel failed to allege deficient performance.

Nagel alleged the parties agreed to a sentencing recommendation that would allow him to be parole eligible after 12½ years, but trial counsel ineffectively drafted the terms into the written plea agreement. He stated the written plea agreement, recommending a sentence that would make him parole eligible after 22 years, was "contrary to what counsel had advised [him]." Based on the allegations in Nagel's motion for postconviction relief, the parties agreed to a sentencing recommendation that would permit Nagel to be parole eligible after 12½ years, and trial counsel accurately communicated that agreement to Nagel. On this claim, Nagel failed to make allegations of deficient performance, and the district court did not err in denying it without an evidentiary hearing.

CONCLUSION

The district court did not err in denying Nagel's motions for postconviction relief without an evidentiary hearing. We affirm the judgment of the district court.

AFFIRMED.