IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. FREDRICKSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RICHARD A. FREDRICKSON, APPELLANT.

Filed October 22, 2024.    No. A-23-975.

Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed.

Nicholas E. Wurth, of Law Offices of Nicholas E. Wurth, P.C., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

In 2019, Richard A. Fredrickson pled no contest to one count of robbery, and the Washington County District Court sentenced him to 20 to 38 years' imprisonment. His sentence was affirmed on direct appeal. Fredrickson subsequently filed a motion for postconviction relief raising several claims of ineffective assistance of trial counsel and appellate counsel. Following an evidentiary hearing, the district court denied his motion for postconviction relief. Fredrickson appeals. We affirm.

## II. BACKGROUND

### 1. INCIDENT AND CHARGES

On April 11, 2018, two individuals, armed with what was later determined to be a pellet gun, entered a gas station in Fort Calhoun, Nebraska. They took approximately $200. The incident terrorized the employees in the store. See *State v. Fredrickson*, No. A-19-633, 2020 WL 2643875

- 1 -

(Neb. App. May 26, 2020) (selected for posting to court website). Search warrants for Fredrickson's residence and vehicle were obtained and executed; evidence was collected and inventoried. Fredrickson was on probation at the time, thus making him subject to the search and seizure of his premises, person, and vehicle. See *id*.

On August 3, 2018, the State filed an information charging Fredrickson with three counts: use of a deadly weapon to commit a felony, a Class IC felony; possession of a deadly weapon (firearm) by a felon, a Class ID felony; and robbery, a Class II felony. The State also alleged that Fredrickson was a habitual criminal. The State filed an amended information on March 12, 2019, which eliminated the habitual criminal enhancement and amended the use of a deadly weapon charge to involve a non-firearm, lowering it from a Class IC felony to a Class II felony.

2. PRETRIAL PROCEEDINGS AND PLEA

Fredrickson's trial counsel filed three motions to suppress. On September 29, 2018, he filed a motion to suppress the witness identification of Fredrickson and the suspected vehicle and handgun used in the robbery. This motion was withdrawn in Fredrickson's presence after the State confirmed that it did not intend to use the past-identification evidence in its case-in-chief. On November 10, trial counsel filed a motion to suppress "all evidence obtained from a search of [Fredrickson's] residence and vehicle on or about April 11, 2018," and requested a *Franks* hearing because representations made by law enforcement when applying for search warrants were either false or made with a reckless disregard for the truth; an amended motion was filed on March 19, 2019. See *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Following a *Franks* hearing, the court entered an order denying the motion. On March 30, trial counsel filed another motion to suppress the evidence obtained from the search of Frederickson's residence and vehicle. This time, he argued that the State was "unable to provide certified copies of the original [search warrant] affidavits, the original search warrants, and the original inventories."

Trial counsel also conducted depositions of various witnesses, including the investigating officers. He filed notices of deposition on January 14, February 20, and March 22, 2019. The district court entered an order allowing Fredrickson to be present at all but one of the depositions. The deposition of Fredrickson's coperpetrator, Bradley Terry, was scheduled for March 28. According to the parties, Terry was transported to his deposition from jail that day but refused to testify.

A jury trial was set for April 15, 2019. Ten days prior to that, on April 5, all pending motions were heard, including Fredrickson's March 30 motion to suppress, his motion to compel discovery, his motion in limine to exclude Terry from testifying, and the State's motion to admit hearsay evidence. The parties stipulated to submitting the March 30 motion to suppress for the district court's consideration based on the evidence previously received at the *Franks* hearing. Following a 12-minute recess, trial counsel made an oral motion to continue, stating:

> The State has extended Mr. Fredrickson a plea deal. I've gone over that with him. He was wondering if we could ask the Court to continue the matter for a pretrial on Tuesday, April 9th.
> . . . .
> And the idea is that I have a lot of new discovery, I want to jump right into it, show it to him, and [the State has] extended the plea offer until the 9th.

The court stated that a pretrial hearing could be scheduled but made no further rulings on the motion. The court also addressed the State's motion to continue the trial due to witness unavailability; the motion was filed prior to the April 5 proceeding. After a lengthy discussion, the court denied the State's motion.

The district court then addressed Fredrickson's motion to compel specific items of discovery, which had been filed on April 3, 2019. Trial counsel noted that he received some of the items listed in the motion that day, including: all photos taken during the search of the residence; photos of clothes and other items found in the search of the car; photos taken from testing the pellet gun to show it was a dangerous weapon; jail phone call recordings; photos of the "subject vehicle . . . the black BMW"; surveillance video of the gas station; 911 recordings; and contact information for the neighbor who had a video pointing at the back side of Fredrickson's house. It was acknowledged that there were no DNA or fingerprint tests conducted and no "Cellebrite" analysis of Fredrickson's or Terry's phones was performed. The State indicated that it had provided all discovery in its possession. Nevertheless, the court ordered the State to cooperate in obtaining any cruiser or body camera video taken during the searches and when Fredrickson was being transported by law enforcement; to provide the log of all officers who searched the house and all police reports; and to provide all photos and to "request again of the Washington County Sheriff's Department to provide any photos of the investigation of this case that they may have."

The district court then turned to Fredrickson's motion in limine to exclude Terry from testifying since he refused to sit for his deposition. The State confirmed that Terry refused to testify at a scheduled deposition the previous week but that it still intended to call him as a witness. The State indicated that a proffer interview was done with Terry, at which time law enforcement went through Terry's account of what happened and what his testimony would be; an audio tape of that interview was provided to trial counsel. In lieu of ruling on the motion in limine, the court ordered that the parties attempt to conduct another deposition of Terry on April 9. As for the State's motion to admit hearsay evidence related to a certified motor vehicle title for a "black BMW," Frederickson's trial counsel had no objection, and the court granted the State's motion.

Next, the district court arraigned Fredrickson on the amended information. The court explained the elements of each charge and the possible penalties. Fredrickson then entered a plea of "[n]ot guilty" to all three counts. Before the hearing concluded, the court asked to see counsel "just one more time in chambers."

Thirty-eight minutes later, the district court went back on the record. Trial counsel stated, "[Fredrickson] wants to change his plea. He had previously entered pleas of not guilty to three counts. It's my understanding that the State is going to allow him to plead guilty to the robbery charge. In exchange, the State is going to dismiss the other two counts." The court asked whether there was an agreement with regard to sentencing, and the following colloquy occurred:

> [State]: There's no agreement as to sentencing.
> [Fredrickson]: So if I plead guilty, you just give me 50 years, is that what you mean?
> [Trial Counsel]: No.
> [State]: No.
> THE COURT: Well, I'm the one that sentences people. I just didn't know what the State's position was.

[State]: If it makes it easier, I will recommend a term of 20 to 25 years.
[Trial Counsel]: Thank you.

The district court then went over the plea agreement with Fredrickson, reiterated the elements and possible penalties of robbery, and asked questions to confirm that he was entering his plea freely, voluntarily, knowingly, and intelligently. The following colloquy took place:

THE COURT: Did [trial counsel] discuss with you all -- Or did you discuss with him, excuse me, all facts as you believe them to be and any defenses that you may have to the charge?

[Frederickson]: Yes.

THE COURT: Are you satisfied with the job [trial counsel] has done for you?

[Frederickson]: Yeah.

THE COURT: Do you believe your attorney is competent and he knows what he's doing?

[Frederickson]: Yes.

THE COURT: Has your attorney put in an adequate amount of time in researching, investigating, preparing, and discussing the case with you?

[Frederickson]: Yes.

Shortly thereafter, the State provided the factual basis for Fredrickson's plea. The court asked Fredrickson if he felt the plea agreement was in his best interest. He replied, "No." The court responded, "Okay. Very good. See you on April 15th."

Following a 12-minute recess, the parties returned, and the district court asked Fredrickson if he wanted the court to reconsider his plea. Fredrickson said, "Yes." The court once again asked him questions to ensure that he was entering his plea freely, voluntarily, knowingly, and intelligently. This time, when asked whether he thought the plea was in his best interest, Fredrickson replied, "Yes." The court found beyond a reasonable doubt that (1) there was a factual basis for the plea; (2) Fredrickson fully understood his rights and was waiving them freely and voluntarily; (3) he understood the nature of the charge, the consequence of his plea of no contest, and the penalty that could be imposed; and (4) the plea of no contest was made freely, voluntarily, knowingly, and intelligently. The court then accepted Fredrickson's plea of no contest to count II, robbery, and found him guilty of the same.

3. SENTENCING

At the sentencing hearing held on June 4, 2019, the parties jointly recommended a sentence of 20 to 25 years' imprisonment pursuant to the plea agreement. However, the district court stated, "I will follow the low end, and I'm sure you understand the significance of that, but on the high end I want parole supervision for a longer period of time, especially given the previous criminal record that you have." The court ultimately sentenced Fredrickson to 20 to 38 years' imprisonment with credit for 419 days already served.

### 4. Direct Appeal

Fredrickson timely filed a direct appeal and was appointed new counsel for the appeal. He argued that his sentence was excessive, and he raised multiple issues concerning ineffective assistance of trial counsel. Specifically, he argued that his trial counsel failed to make inquiries and assert objections related to search warrants, did not conduct basic and necessary discovery, failed to adequately pursue plea negotiations, failed to seek a continuance when Fredrickson had not participated in the presentence investigation process, and failed to research or assert Fredrickson's alibi defense. This court affirmed Fredrickson's sentence. See *State v. Fredrickson*, No. A-19-633, 2020 WL 2643875 (Neb. App. May 26, 2020) (selected for posting to court website). Additionally, this court found that the record was insufficient to address Fredrickson's ineffective assistance of counsel claims on direct appeal with respect to (1) whether discovery was received, reviewed, and discussed in a meaningful manner with Fredrickson prior to him entering his plea of no contest and whether he and trial counsel discussed the option of continuing the trial to give counsel the ability to receive and review discovery; and (2) whether trial counsel's failure to obtain and review discovery hampered counsel's ability to negotiate a better plea deal. This court further found that Fredrickson's remaining ineffective assistance of trial counsel claims either failed or were not properly argued and preserved.

### 5. Postconviction Relief

On July 20, 2020, Fredrickson, pro se, filed a motion for postconviction relief and requested an evidentiary hearing. Fredrickson claimed that there was "plain error" when the district court failed to accurately advise him (1) that "he retain[ed] the right to have [an] attorney represent him at any future hearing and retain[ed] the right to appeal," (2) that "he had a right to a public trial before a jury of 12 persons who must unanimously agree that he is guilty beyond a reasonable doubt," and (3) that "the district court was not bound by the plea agreement." Fredrickson also claimed that there was "plain error" when the State failed to allege that all events occurred in Washington County, Nebraska, during its factual basis. Fredrickson asserted that because of the "plain error," his plea of no contest was not knowingly, intelligently, and voluntarily made, and he was denied due process.

Fredrickson claimed that his trial counsel was ineffective for: (1) "failing to file a motion to quash [the] amended information . . . which was not subscribed and sworn to under oath"; (2) "failing to file a motion to withdraw [his] plea of no contest after the court did not accurately advise [him]" (a) "that he retain[ed] the right to have [an] attorney represent him at any future hearing and retain[ed] the right to appeal," (b) "that he had a right to a public trial before a jury of 12 persons who must un[a]nimously agree that he is guilty beyond a reasonable doubt," and (c) "that the district court was not bound by the plea agreement"; (3) "failing to file a motion to withdraw [his] plea . . . [because he] was not adequately advised as to the complete range of penalties available to the district court for sentencing"; (4) "failing to file a motion to withdraw [his] plea of no contest after the [S]tate's factual basis failed to state that all events occurred in Washington County, Nebraska"; and (5) "rescheduling [his *Franks*] hearing to a date that effectively waived his right to a speedy trial." Fredrickson asserted that based on the foregoing, his plea of no contest was not knowingly, intelligently, and voluntarily made. Additionally,

Fredrickson claimed that his trial counsel was ineffective for (6) "fail[ing] to obtain complete discovery" and (7) "fail[ing] to try and get a better plea deal."

Fredrickson claimed that his appellate counsel was ineffective for raising issues that were frivolous, and fail[ing] to raise issues that had merit, to-wit: (1) trial counsel was ineffective for not filing a motion to quash [the] amended information; (2) trial counsel was ineffective for not filing a motion to withdraw [his] plea of no contest; (3) trial counsel was ineffective for not objecting or making the court aware of the fact that (a) [the] amended information was not subscribed and sworn to under oath, (b) [Fredrickson] was not accurately advised he retain[ed] the right to have [an] attorney represent him at any future hearing and retain[ed] the right to appeal, a right to a public trial before a jury of 12 persons who must unanimously agree that he is guilty beyond a reasonable doubt, the district court was not bound by the plea agreement made by the state[;] (4) insufficient factual basis[;] and (5) plain error.

Additionally, Fredrickson claimed that his appellate counsel was ineffective for failing to raise on direct appeal that trial counsel was ineffective when counsel did not (6) obtain complete discovery and (7) try to get a better plea deal.

The district court ordered the State to file a response to Fredrickson's motion, which the State failed to do. On November 25, 2020, the court entered an order finding that Fredrickson's claims of "plain error" were procedurally barred because Fredrickson "cannot use the post-conviction act to secure review of issues which were known to him or could have [been] litigated on direct appeal but were not." For that same reason, the court found that all of Fredrickson's claims of ineffective assistance of trial counsel were procedurally barred except for the claims reserved by the Court of Appeals with respect to whether (1) discovery was received, reviewed, and discussed in a meaningful manner with Fredrickson prior to him entering his no contest plea and whether he and trial counsel discussed the option of continuing the trial to give counsel the ability to receive and review discovery; and (2) trial counsel's failure to obtain and review the discovery hampered counsel's ability to negotiate a better plea deal; the district court found that Fredrickson was entitled to an evidentiary hearing on those two issues. The district court also found that Fredrickson was entitled to an evidentiary hearing on his claims of ineffective assistance of appellate counsel. The court appointed new counsel to represent Fredrickson for the postconviction evidentiary hearing.

In May 2023, the district court ordered Fredrickson's postconviction counsel to submit a letter on or before July 19 identifying the specific allegations of ineffective assistance of counsel he intended to argue and produce evidence in support of at the evidentiary hearing. Postconviction counsel subsequently submitted a letter stating his intent to argue the claims of ineffective assistance of trial counsel that were raised but not decided on direct appeal: (1) whether discovery was received, reviewed, and discussed with Fredrickson in a meaningful manner prior to entry of the plea; (2) whether trial counsel and Fredrickson discussed the option of continuing the trial to give counsel the ability to receive and review discovery; and (3) whether trial counsel's failure to obtain and review the discovery hampered counsel's ability to negotiate a better plea deal. In addition, postconviction counsel specifically stated that he intended to argue only two claims of ineffective assistance of appellate counsel: (1) appellate counsel's failure to assign as error that

trial counsel was ineffective for not filing a motion to withdraw Fredrickson's plea of no contest, and (2) appellate counsel's failure to assign as error that Fredrickson was not advised that the district court was not bound by the plea agreement made with the State.

(a) Evidentiary Hearing

The evidentiary hearing was held on August 28, 2023. The bill of exceptions from previous hearings was received into evidence. Depositions of trial and appellate counsel were admitted into evidence in lieu of live testimony. Fredrickson testified on his own behalf. Rebuttal affidavits from trial and appellate counsel were also received into evidence.

*(i) Trial Counsel's Deposition*

Fredrickson's trial counsel testified that he was court-appointed to represent Fredrickson. He stated that the amended information was not based on plea negotiations but was filed because the State discovered that Fredrickson's criminal history did not support the filing of a habitual criminal charge. Additionally, the State reduced "use of a firearm down to . . . use of a deadly weapon" because "it turned out that the firearm was, in fact, a BB gun."

Trial counsel first received a plea offer at the end of December 2018 or the beginning of January 2019. The plea offer indicated that if Fredrickson pled to count II, robbery, the State would dismiss counts I and III and recommend a sentence of 20 to 25 years' imprisonment. This was confirmed by an email sent by the State to trial counsel on January 4, 2019. The email set forth the plea offer and included a condition that it was "contingent on an early acceptance negating the need for further motions and depositions." Trial counsel recalled communicating the offer to Fredrickson in person shortly after it was received. Fredrickson "didn't want that deal" because of "the sentence, the amount of time, and . . . his desire to fight the charges."

Trial counsel testified that he proceeded to prepare for trial by filing a motion to suppress (related to a search warrant), arguing the motion to suppress, and conducting depositions of law enforcement officers. Fredrickson was made aware of each step taken by trial counsel, and trial counsel sent "deposition transcripts" to him. Overall, trial counsel believed that Fredrickson was adequately informed of all the information. Trial counsel "did a lot of work in support of the motion [to suppress]," but it was ultimately denied. After the motion was denied, trial counsel revisited the plea offer with Fredrickson, but Fredrickson remained uninterested.

Trial counsel testified that he continuously reassessed the plea offer and tried to get the recommended sentence lowered. Fredrickson wanted him to secure 10 years or less, and "that's what [he] was fighting for." However, the State would not budge.

Regarding the proceedings on April 5, 2019, trial counsel testified that he had filed another motion to suppress "based on the lost original applications for [the] search warrants," something that was "unbeknownst to [them] at the prior evidentiary hearing." An off-the-record conversation in chambers led trial counsel to believe that the district court was not inclined to sustain the motion to suppress. Trial counsel "wasn't confident that [he] was going to win that" motion, and he shared this belief with Fredrickson. During the in-chambers conversation, the court inquired whether there were any plea bargains on the table, and the court was made aware of the offer and recommended sentence. The court said that it would have to review the presentence investigation report, but it was inclined to follow the joint sentencing recommendation of 20 to 25 years' imprisonment. Trial

counsel communicated to Fredrickson "that the Judge was amenable, and willing to follow the joint recommendation for 20 to 25, with the caveat that he still wanted to see a [presentence investigation report], and he could change his mind." Nonetheless, counsel advised Fredrickson "that the Judge would likely follow [the] joint recommendation . . . if [Fredrickson] pled to Count 2." Trial counsel advised Fredrickson to take the plea offer that day because it was his understanding that "as [they] got closer to trial, which was . . . 10 days from then, that [they] would lose the offer." Trial counsel did not specifically remember the State putting an expiration date on the plea offer.

With respect to discovery, trial counsel stated that he requested all of the discovery that Fredrickson asked for and that he communicated with his client "quite a bit" to review the discovery. Trial counsel told Fredrickson, "I didn't think that there was much else I could do in terms of pretrial litigation, and we still wanted some outstanding discovery, but, based on my understanding of the case, I wasn't expecting any exculpatory evidence." Counsel further stated, "I didn't think it was going to change the outcome of the case, in fact, I was worried that it'd be more damning than exculpatory." "[U]ltimately, per our conversations, [Fredrickson] decided that it was in his best interests to take the deal and forego the additional discovery review." At the time of the plea, there was a pending motion to exclude Terry's testimony, but trial counsel believed there was at least a sufficient probability that the State would meet its burden of proof even if Terry was precluded from testifying.

### (ii) Appellate Counsel's Deposition

Fredrickson's appellate counsel testified that he was court-appointed to represent Fredrickson on direct appeal. Appellate counsel mailed a letter to Fredrickson and "spoke to him on the phone at least once, if not twice, prior to preparing [the] brief." Fredrickson's "main problem was [that] he felt pressured into entering his plea by [trial counsel]." Appellate counsel reviewed the "Justice records," the bill of exceptions, and the presentence investigation report. He then met with Fredrickson in person on August 30, 2019, at the prison. Appellate counsel "had a pretty final draft of [the] brief prepared," and he and Fredrickson "went through [the brief] page by page, line by line." The only addition he made was to the alibi defense section. Fredrickson "ultimately said, this is what I want you to send." Appellate counsel filed the brief that same day.

### (iii) Fredrickson's Testimony

Fredrickson testified that he met with trial counsel face-to-face "numerous times" and that he was able to get ahold of him "sporadically" over the phone, during which they discussed motions and discovery. One of the motions set for hearing on April 5, 2019, was a motion to compel discovery. Regarding the alleged outstanding discovery, Fredrickson stated, "[Trial counsel] asked me, well what is this other discovery going to show, and I told him I didn't know." Counsel responded, "well, I doubt it's going to be anything that's going to change the outcome." It was Fredrickson's belief that there was the potential for additional discovery to be disclosed. It was also Fredrickson's understanding that Terry was not going to testify against him at trial, "but [he] still believed that somehow [the State] would have made it happen."

Fredrickson testified that he wanted to go to trial but felt pressured into taking the plea deal. Up to and including April 5, 2019, his trial counsel told him three different times that the

State was offering a plea deal for "20 to 25" on the robbery, and the third time counsel said that he "was running out of time to take the deal." Prior to April 5, Fredrickson was given no indication that the plea deal had an expiration date. On April 5, Fredrickson told the prosecutor that he would only take the deal if the State could get the district court to sign off on the sentencing recommendation, but "[the State] said that's not going to happen." Fredrickson still did not accept the deal at that point.

Fredrickson testified that at the proceeding on April 5, 2019, when he was asking for "the rest of the discovery," the prosecutor leaned back in his chair and whispered, "[I]f I have to do a bunch of extra work, then the deal is off the table." Fredrickson also testified that during a break, trial counsel informed him that the district court said it would impose a 40-year sentence if he went to trial and was convicted. Fredrickson understood that "it's either I take this plea deal and appeal on a 10-year sentence, or I go to trial and end up having to appeal this on a possible 40-year sentence." Fredrickson accepted the plea deal, which included a joint sentencing recommendation of 20 to 25 years' imprisonment. Trial counsel "never made it seem as if that number would raise," nor did counsel tell him that it was possible he could receive more than 20 to 25 years' imprisonment. Fredrickson's understanding was that "usually if the State recommends it, that's what happens," and he "assumed that it was pretty much ironclad."

After entering his plea of no contest, Fredrickson changed his mind because he "felt like [he] was laying down," "[l]ike [he] was just letting it happen." Fredrickson told trial counsel over the phone and in person that he wanted to withdraw the plea and continue to trial. According to Fredrickson, trial counsel said, "It's not in your best interest to go to trial. They're going to convict you."

Regarding appellate counsel, Fredrickson met with counsel in person to discuss the arguments and assignments of error for his appeal. Fredrickson "briefly" reviewed appellate counsel's proposed brief in support of the appeal. Fredrickson recalled telling appellate counsel to assign as error trial counsel's failure to file a motion to withdraw his plea. However, appellate counsel did not include this argument in his brief.

### (iv) Rebuttal Affidavits

In trial counsel's rebuttal affidavit, counsel stated, "I did have a telephone call with Mr. Fredrickson, who at the time, was interested in withdrawing his plea." "In said call, I discussed the legal issues intertwined with a motion to withdraw his plea, and by the end of the conversation, Mr. Fredrickson advised that he had changed his mind and was no longer interested in withdrawing his plea."

In appellate counsel's rebuttal affidavit, counsel stated that his brief "included every section and every argument that Mr. Fredrickson wanted to include."

### (b) District Court's Order

The district court entered an order denying Fredrickson's motion for postconviction relief on November 13, 2023. The court's order will be discussed more fully as necessary later in our analysis.

Fredrickson appeals.

## III. ASSIGNMENTS OF ERROR

Fredrickson assigns, restated, that the district court erred in not finding trial counsel ineffective for (1) failing to receive, review, and discuss discovery with Fredrickson prior to entry of the plea; (2) failing to discuss a continuance of trial with him, and (3) failing to negotiate a better plea offer. He also claims that the district court erred in not finding appellate counsel ineffective for failing to assign as error on direct appeal that (4) trial counsel erred in not filing a motion to withdraw the plea, and (5) his plea was not knowingly made since he was not advised that the district court was not bound by the plea agreement.

## IV. STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's findings unless they are clearly erroneous. *State v. Ellis*, 311 Neb. 862, 975 N.W.2d 530 (2022).

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.* When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Ellis, supra*.

## V. ANALYSIS

### 1. GENERAL PRINCIPLES OF LAW

Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland*, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Ellis, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *State v. Ellis, supra*.

### 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### (a) Discovery

Fredrickson contends that "[t]he district court erred in finding that trial counsel was not ineffective for failing to receive, review and discuss discovery with [Fredrickson] prior to entry of

the plea." Brief for appellant at 4. The State contends that "Fredrickson's claim on appeal is different than what was raised in his motion for postconviction relief," i.e., that trial counsel was ineffective for not obtaining complete discovery, and "is therefore barred from review." Brief for appellee at 13.

The State is correct that Fredrickson's initial pro se motion for postconviction relief did not articulate this claim. However, after Fredrickson was appointed postconviction counsel, the district court entered an order in May 2023 directing postconviction counsel to identify the specific allegations of ineffective assistance of counsel Fredrickson intended to argue and produce evidence of at the evidentiary hearing. In a letter responding to the district court, postconviction counsel specifically set forth the ineffective assistance claims of trial counsel that this court determined it could not address on direct appeal. The letter also set forth two additional ineffective assistance claims related to appellate counsel. These claims were all addressed by the district court in its November 13, 2023, order denying postconviction relief. Since the ineffective assistance claims raised in the present appeal were specifically addressed at the evidentiary hearing and were ruled upon by the district court in its order denying postconviction relief, we will address them on appeal.

As found by the district court, the record shows that trial counsel started to receive a "substantial amount" of discovery beginning on July 26, 2018, and continued to receive additional discovery prior to the entry of the no contest plea. Moreover, trial counsel had conducted numerous depositions and provided Fredrickson with "transcripts" of the officers' testimony. It is also evident from the testimony of both Fredrickson and trial counsel that prior to Fredrickson's plea of no contest, they communicated multiple times in person and over the phone. During those conversations, they discussed discovery and motions. Trial counsel confirmed that he requested all the discovery that Fredrickson asked him to obtain. Fredrickson acknowledged that the motion to compel was trial counsel's attempt to obtain the discovery that he wanted. At the proceeding on April 5, 2019, the State said that it had provided Fredrickson with all the discovery in its possession.

Although some discovery, such as law enforcement "car cams" and "body cam footage" had allegedly not been received prior to Fredrickson's plea of no contest, there was also some uncertainty as to whether it existed and which law enforcement agency would be in possession of it. Trial counsel indicated that the body cam footage from the search of the house would show whether anybody else was in the house or if there were people hiding. Trial counsel wanted to "watch the video of them tossing the house," but he later testified in the postconviction proceeding that with regard to the "outstanding discovery," he was not "expecting any exculpatory evidence," and he "didn't think it was going to change the outcome of the case." In fact, trial counsel was "worried that it'd be more damning than exculpatory." Trial counsel also testified that he did not think the State's likelihood of success would have been materially affected if Terry did not testify at trial. Trial counsel said he communicated this information to Fredrickson. At the time Fredrickson entered his plea, he was aware that Terry was not cooperating with the State and that there was a chance he would not testify at trial. Trial counsel also testified that during an off-the-record conversation in chambers, he was led to believe that the court was not likely to rule in Fredrickson's favor on a pending motion to suppress.

Based on the foregoing, we conclude that trial counsel and Fredrickson conducted a meaningful review of discovery already in their possession before Fredrickson entered his plea of no contest, and that Fredrickson was aware of what discovery remained outstanding. Additionally, as noted by the district court, during the plea hearing, Fredrickson told the court that he was satisfied with the representation he received from trial counsel. Specifically, at the hearing on April 5, 2019, the following colloquy was had on the record.

> THE COURT: . . . Did your attorney explain to you the remaining charge, that being the one count of robbery?
> [Fredrickson]: Yes.
> THE COURT: Are you satisfied with the job [trial counsel] has done for you?
> [Fredrickson]: Yeah.
> THE COURT: Do you believe your attorney is competent and he knows what he's doing?
> [Fredrickson]: Yes.
> THE COURT: Has your attorney put in an adequate amount of time in researching, investigating, preparing, and discussing the case with you?
> [Fredrickson]: Yes.

Accordingly, the record refutes Fredrickson's claim that trial counsel was ineffective for failing to receive, review, and discuss discovery with him prior to entry of the plea.

Finally, we note that Fredrickson has not specified what the additional outstanding discovery would have shown, or how it would have created a reasonable probability that he would have insisted on going to trial rather than pleading no contest. Because Fredrickson cannot show deficient performance or prejudice, this claim of ineffective assistance of trial counsel fails.

(b) Continuance

Fredrickson asserts that "[t]he district court erred in finding that trial counsel was not ineffective for failing to discuss continuation of the trial." Brief for appellant at 4. The record does not support this claim.

On March 25, 2019, a few weeks before the scheduled trial, trial counsel asked the district court if it would be possible to move the trial. The court replied that it did not have an opening within the next few months without moving civil cases, and the court was "getting tired of bumping civil cases all the time to accommodate criminal cases." Thereafter, trial counsel had an off-the-record conversation with Fredrickson. When they returned, trial counsel stated, "I've conferred with my client. He would appreciate keeping the trial set for the 15th[.]" At the April 5 proceeding, the court addressed the State's motion to continue the trial due to the unavailability of witnesses. After a lengthy discussion, the court denied the State's motion due to scheduling conflicts. Therefore, as the district court noted, both trial counsel and Fredrickson had been in court on two separate occasions where discussion was held about continuing the trial. On the first occasion, Fredrickson wanted to go to trial, and on the second occasion, the court denied the State's continuance. There is no evidence that Fredrickson ever changed his mind about keeping the April 15, 2019, trial date.

At the postconviction hearing, Fredrickson recalled asking trial counsel on April 5, 2019, to request a continuance of the trial, but counsel did not make the request on Fredrickson's behalf. Fredrickson wanted the continuance because "I wasn't cool with going to prison for a crime I didn't commit" and he "wanted to see the rest of the discovery"; "I felt like you can't make an informed decision without all the information." However, as discussed above, the record shows that trial counsel and Fredrickson conducted a meaningful review of discovery before Fredrickson entered his plea. As such, trial counsel did not perform deficiently, and this claim fails.

### (c) Plea Negotiations

Fredrickson claims that "[t]he district court erred in finding that trial counsel was not ineffective for failing to negotiate a better plea offer." Brief for appellant at 4. The district court found that the evidence shows that the plea agreement had been discussed between trial counsel and the State numerous times. We find no clear error with this factual determination. Trial counsel testified that he continuously reassessed the plea offer and tried to get the State to reduce the recommended sentence. He stated that Fredrickson wanted him to secure 10 years or less, and "that's what [he] was fighting for." Based on these facts, we find that trial counsel did not perform deficiently.

Fredrickson argues that trial counsel's failure to review the outstanding discovery and failure to resolve the pending matters made it "impossible to resolve whether a better plea offer could be obtained." Brief for appellant at 23. However, Fredrickson offers no evidence to show that this would have resulted in a better plea offer. Therefore, there is no evidence that Fredrickson suffered prejudice. Because Fredrickson has not shown deficient performance or prejudice, this claim of ineffective assistance of counsel fails.

### 3. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). That is, courts begin by assessing the strength of the claim appellate counsel failed to raise. *Id.* Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id.* When a case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See *State v. Sellers, supra*. If trial counsel was not ineffective, then the defendant suffered no prejudice when appellate counsel failed to bring an ineffective assistance of trial counsel claim. *Id.*

### (a) Motion to Withdraw Plea

Fredrickson argues that "[t]he district court erred in finding that appellate counsel was not ineffective for failing to assign error that trial counsel erred in not filing a motion to withdraw the plea." Brief for appellant at 4. The right to withdraw a plea previously entered is not absolute. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). A court has discretion to allow a defendant to withdraw a plea *prior to sentencing* for any fair and just reason, provided that such withdrawal

would not substantially prejudice the prosecution. *State v. Boone*, 314 Neb. 622, 992 N.W.2d 451 (2023) (emphasis added). However, the Nebraska Supreme Court has stated, "[W]e see no basis in our law to conclude that courts have authority to allow a defendant to withdraw a plea *after sentencing* whenever it is shown that withdrawal is necessary to prevent a manifest injustice[.]" *Id.* at 628, 992 N.W.2d at 455 (emphasis added). Rather, there is an "extremely limited" procedure whereby a court can allow a defendant to withdraw a plea after his or her conviction has become final. *Id.* (citing *State v. Gonzalez*, 285 Neb. 940, 948, 830 N.W.2d 504, 510 (2013)). This procedure is available only when (1) the Nebraska Postconviction Act is not, and never was, available as a means of asserting the ground or grounds justifying withdrawing the plea and (2) a constitutional right is at issue. *State v. Gonzalez, supra*. This procedure exists to safeguard a defendant's rights in the very rare circumstance where due process principles require a forum for the vindication of a constitutional right and no other forum is provided by Nebraska law. *Id.*

It is unclear when Fredrickson called trial counsel to request a withdrawal of his plea. Nonetheless, trial counsel testified in a sworn affidavit that, after discussing the legal issues intertwined with withdrawal, Fredrickson decided not to withdraw his plea. The district court accepted this testimony, and upon reviewing the factual findings of the lower court, we find no clear error. As such, even if Fredrickson made a request to withdraw his plea *prior to sentencing*, there is no evidence that he wanted trial counsel to file the motion after the phone call but before sentencing. *After sentencing*, the district court lacked the authority to permit Fredrickson to withdraw his plea because the Nebraska Postconviction Act provided a proper avenue to raise this claim. We conclude that trial counsel was not ineffective for failing to file a motion to withdraw Fredrickson's plea.

Because trial counsel was not ineffective, Fredrickson suffered no prejudice by appellate counsel's failure to raise an ineffective assistance of trial counsel claim regarding this issue. Therefore, this claim fails.

(b) Plea

Fredrickson also asserts that "[t]he district court erred in finding that appellate counsel was not ineffective for failing to assign error that appellant's plea was not knowingly made when he was not advised that the district court was not bound by the plea agreement." Brief for appellant at 4. In order to support a finding that a plea of guilty or nolo contendere has been entered freely, voluntarily, knowingly, and intelligently, the court must (1) inform the defendant concerning (a) the nature of the charge, (b) the right to assistance of counsel, (c) the right to confront witnesses against the defendant, (d) the right to a jury trial, and (e) the privilege against self-incrimination; and (2) examine the defendant to determine that he or she understands the foregoing. Additionally, the record must establish that (1) there is a factual basis for the plea and (2) the defendant knew the range of penalties for the crime with which he or she is charged. See *State v. Mead*, 313 Neb. 892, 987 N.W.2d 271 (2023). A voluntary and intelligent waiver of the above rights must affirmatively appear from the face of the record. *Id.*

Here, Fredrickson was informed of the range of penalties for robbery numerous times, and the district court found that he was aware of these penalties. We find no clear error with this determination.

It is true that the district court did not tell Fredrickson that it was not bound by the sentencing agreement. In *State v. Hammel*, 17 Neb. App. 788, 769 N.W.2d 413 (2009), the Nebraska Court of Appeals determined that because the district court failed to advise the defendant that the court was not bound by the plea agreement made with the State concerning sentencing, the defendant was not adequately advised of the complete range of penalties for the crime. Therefore, the defendant's plea could not have been entered freely, voluntarily, knowingly, and intelligently. *Id.*

However, in the present case, although the district court did not inform Fredrickson that it was not bound by the sentencing agreement, it is clear from the record that Fredrickson was aware of this fact and therefore, he cannot show that he was prejudiced by the omission. At the April 5, 2019, proceeding, Fredrickson was present when the State said it would "recommend" 20 to 25 years' imprisonment. Further, the district court told Fredrickson, "I'm the one that sentences people. I just didn't know what the State's position was." At the postconviction evidentiary hearing, Fredrickson testified that he told the prosecutor that he would only take the plea deal if the State could get the court to sign off on the sentencing recommendation, but the State told him, "[T]hat's not going to happen." In addition, Fredrickson understood that "usually if the State recommends it, that's what happens." These statements demonstrate that Fredrickson was aware that the court was not bound by the sentencing agreement, and therefore, even if appellate counsel had raised this claim on direct appeal, the claim would have failed. Thus, Fredrickson cannot demonstrate prejudice on this ineffective assistance of appellate counsel claim.

## VI. CONCLUSION

For the reasons set forth above, we affirm the district court's order denying Fredrickson's motion for postconviction relief.

AFFIRMED.